HOWARD v. STATE.

Opinion delivered February 21, 1916.

1. HOMICIDE—SUFFICIENCY OF EVIDENCE—MANSLAUGHTER.—In a prosecution for homicide, the evidence held sufficient to warrant a verdict of manslaughter.

2. HOMICIDE—ASSAULT—PROVOCATION—WORDS.—Mere words, however abusive and insulting, do not justify an assault, but when sufficiently aggravating to invite combat with the person to whom they are addressed, and when a difficulty is thus brought on, the one who first invites it, must endeavor to retire and decline to further contest, if he can do so with safety, before he is justified, on the ground of self-defense, in slaying his adversary.

3. HOMICIDE — BEHAVIOR OF DEFENDANT — SELF-DEFENSE.— Defendants, father and son, were engaged in an altercation with deceased, threats having passed between the parties; the father, in the midst of the argument, left the scene, returning shortly armed with a stick and in a threatening attitude. *Held,* this conduct amounted to an invitation to further combat, and would preclude the defendants from pleading self-defense.

4. CRIMINAL LAW—ERRONEOUS INSTRUCTION AS TO EXTENT OF PUNISHMENT—HARMLESS ERROR.—In a criminal prosecution, the giving of an erroneous instruction fixing the extent of punishment, will be held harmless, when the jury disregarded it, and fixed the punishment at less than the amount named in the instruction.

Appeal from Grant Circuit Court; *W. H. Evans,* Judge; affirmed.

*Paul G. Matlock* and *T. D. Crawford,* for appellant.

1. There was error in giving the State's instructions Nos. 10, 11, 13 and 20. They were not applicable to the facts and calculated to mislead the jury. 36 Ark. 127.

2. There is also error in Nos. 17 and 18. It is not true, as a matter of law that one who fights and returns and fights, is guilty of a felony; that depends upon circumstances and does not preclude the plea of self-defense.

3. The 19th and 22d are also error. The former is abstract and the latter cuts off a finding by the jury of involuntary manslaughter. 21 A. & E. Enc. L. 190; 22 Ark. 539.

4. The verdict is not supported by the evidence. Brashears was the aggressor; Howard never was. He was constantly endeavoring to elude Brashear's pursuit.

*Wallace Davis,* Attorney General, *Hamilton Moses,* Assistant, for appellee.

1. 36 Ark. 127 cited for appellants sheds no light on this case. Here there could be no prejudicial error in instructions relating to any higher degree of homicide than manslaughter, the crime of which appellants were convicted. 60 Ark. 76; 76 *Id.* 84; 73 *Id.* 280; 99 *Id.* 591; 54 *Id.* 4; 58 *Id.* 513; 102 *Id.* 199.

2. Instruction No. 19 is not error. The assault by Brashears had ceased. This instruction was approved in 83 Ark. 81.

3. Involuntary manslaughter can not be here pleaded. There can be no involuntary manslaughter where there is an intent to kill. Where there is no evidence of a lower degree of homicide the court should refuse to instruct in reference to involuntary manslaughter. 74 Ark. 265; 80 *Id.* 226; 95 *Id.* 100; 102 *Id.* 266; 88 *Id.* 447. Furthermore no such instruction was asked by defendants and they can not complain. 114 Ark. 399; 74 *Id.* 265; 95 *Id.* 409; 102 *Id.* 186; 109 *Id.* 510; 109 *Id.* 523; 74 *Id.* 444.

4. The evidence is legally sufficient to sustain the verdict. 104 Ark. 142; 101 *Id.* 570; 109 *Id.* 130; *Ib.* 138.

McCULLOCH, C. J. This is an appeal from a judgment of conviction of the defendants, W. A. Howard and Lucien Howard, of the crime of voluntary manslaughter, committed by striking with sticks and killing one John Brashears. One of the contentions is that the testimony is not sufficient to sustain the verdict, and it becomes necessary, therefore, to notice briefly the testimony, as presented in the light most favorable to the contention of the State.

The two defendants are father and son, W. A. Howard, the elder, being about fifty-four years old, and his son, Lucien, a grown man. They lived in the town of Leola, Grant County, Arkansas, where the killing occurred, as did deceased, John Brashears. Leslie Howard, another son of the defendant W. A. Howard, had rented a house and garden from one Carver, deceased's brother-in-law, and had recently vacated the premises, but Carver had permitted him to retain possession of the garden, or at least to gather from time to time the vegetables then growing in the garden. Deceased occupied the adjoining premises and permitted his calf to get into the garden. On the day of the killing, Carver and his wife spent the day with deceased, and the elder Howard came over to see about the calf being in the garden. While deceased and Carver and their families were at dinner, the two defendants came to the house of deceased and called Carver out into the yard. W. A. Howard asked about the calf in the garden, and, upon being told that it was deceased's

said: "You tell Brashears to take that calf out of there or there'll be trouble." He asked further about what authority Brashears had for putting the calf in the garden. The defendants left and went back to the house of Lucien, and after dinner deceased and Carver started out to the garden to see what damage was being done by the calf, and soon afterwards they observed the elder Howard going in at the garden gate, and they (deceased and Carver) turned and went over in that direction. As they went into the gate, deceased picked up a stick four or five feet long, and an inch and a quarter by one inch in size, and, as he walked up towards the elder Howard, said, "Here, old man, you're too fast; that's my calf." Howard replied: "Yes, and this is Leslie's garden." Carver interposed and said "No; the garden isn't Leslie's, but the vegetables are." Deceased then said to Howard, "Quit chunking my calf." Some words then passed between them, "cuss words," as stated by witness Carver, and deceased said to Howard: "I'll beat the devil out of you if you don't quit chunking my calf." And Howard replied, "You damned son-of-a-bitch, I'm not afraid of you." Deceased then struck Howard over the head with a stick, and the latter ran and climbed over the fence and called out to his son Lucien to help him, that Brashears was killing him. As Howard ran away, the deceased went over towards the garden gate and passed out of it, and the two met near the gate, when Howard picked up a short piece of plank and threw it at deceased, striking him on the head and knocking his hat off. After throwing at deceased, the elder Howard ran off a short distance, about nintey-four feet the witness states, and then defendant Lucien Howard appeared on the scene. He stepped out in front of deceased, who was advancing in the direction of the elder Howard, and both the men had drawn sticks in their hands—deceased still having the stick with which he had struck the elder Howard while they were in the garden. They stood facing each other for a short time, each urging the other to put down the stick. Howard said "Put down your stick, and don't hurt Pap, and I won't hurt you and won't let Pap hurt you." And de-

deceased replied: "You put down your stick first and I will put down mine." They repeated this, or words to that effect, several times. While this was going on, the elder Howard ran a distance of about forty feet, where he secured another stick, and came back to the place where his son and deceased were facing each other with drawn sticks. The testimony of the witnesses for the State shows that Brashears then began to give ground, and that the two Howards followed him up a distance of more than twenty feet, with drawn sticks, and both struck him over the head and knocked him down. This ended the fight and deceased was carried home in a wheelbarrow and sent to the hospital where he died a day or two later. It was found on examination that his skull was fractured, and there is no doubt that his death resulted from the blows inflicted by one or both of the defendants. The defendants deny that deceased retreated after W. A. Howard came back to the place where deceased and Lucien were facing each other. They testified that deceased had his stick drawn at that time, and that, as the elder Howard came up, he advanced upon him a few feet with the stick and was in the act of striking him, when they both struck him with their sticks.

(1) The evidence is sufficient to establish all the elements of the crime of manslaughter. It shows that the two defendants attacked the deceased with sticks and struck him over the head, thus inflicting blows that produced death. Defendants were not acting in self-defense and were not justifiable on that ground. We are of the opinion, therefore, that the evidence was sufficient to sustain the verdict.

(2) The giving of the following instruction, over the objection of the defendants, is assigned as error: "11. You are instructed that if you believe from the evidence in this case beyond a reasonable doubt that the defendants brought on the difficulty that before they or either of them would be justifiable in striking a fatal blow, that they must show that they in good faith endeavored to decline any further contest before striking the mortal blow."

The basis of the objection to the instruction is that there is no evidence that either of the defendants brought on the difficulty, and that for that reason it was erroneous and prejudicial to submit that question to the jury. There is, we think, evidence sufficient to justify the submission of that issue. It is true that according to the undisputed testimony deceased struck the first blow, but it was provoked by the insulting epithet which the elder Howard used towards deceased in addressing him. Mere words, however abusive and insulting, do not justify an assault, but they may be sufficiently aggravating to invite a combat with the person to whom they are addressed, and when a difficulty is thus brought on, the one who first invites it must endeavor to retire and decline to further contest, if he can do so with safety, before he is justified, on the ground of self-defense, in slaying his adversary. Any other view of the law would permit a person to provoke a difficulty by the use of insulting words, and, when assaulted in consequence of his own wrongful conduct, to slay his adversary with impunity. This is not the law. So it is evident that the instruction was not wholly without evidence to support it.

(3) Besides, the testimony of the defendants themselves shows that they were not justified in striking the deceased. The elder Howard stated in his testimony that he ran on a distance of thirty or forty feet, after his son had intercepted deceased, and after picking up a stick he returned to the place where his son and deceased were standing, or near thereto. He states, it is true, that he did not strike until deceased made another effort to strike him, and that he did not advance on the deceased; but he does state that he armed himself with a stick and returned to the place where the combat was renewed and put himself in a position to meet the attack of the deceased. Now, Lucien Howard states in his testimony that with a stick in his hand he intercepted the deceased and begged him to refrain from striking his father, but he says that his father ran on a short distance further and he did not look back to see what his father was doing, but

knew from the expression on the face of the deceased, and the latter's movements, that his father was returning to the scene. He states that he did not strike the blow until deceased tried to pass him and strike his father. It is evident, however, from the testimony of both of the defendants, that the cause of the fresh encounter was the unnecessary and voluntary return of the elder Howard to the scene. They both knew that deceased was making no effort to strike Lucien Howard, and that there was no probability of the difficulty being renewed unless the elder Howard returned to the scene; and when the latter returned in a threatening attitude, it amounted to an invitation to further combat and precluded the defendants from claiming self-defense.

There were other instructions along the same line, to which the defendants objected, but to those objections the same answer may be made as above.

There is another instruction objected to, which erroneously fixed the extent of the punishment, but as the jury disregarded it and fixed the punishment at less than the amount named in the instruction, it can not be said that there was any prejudice.

(4) We do not find any prejudicial error in the record. The killing was a very deplorable affair and resulted from a very trivial incident. The men were neighbors, and grew angry at each other about the calf of deceased running in the garden. Doubtless neither of them expected anything more to result from the combat than mere bruises or slight wounds. But death has in fact resulted, and under circumstances which show that the two defendants were not justified, and which warrant a finding of guilt of the crime of manslaughter.

Judgment affirmed.