AMERICAN NATIONAL INSURANCE COMPANY *v.* HALE.

Opinion delivered February 21, 1927.

1. INSURANCE—BREACH OF CONDITIONS—WAIVER.—Where the insurer, at the time of issuance of a policy, has knowledge of existing facts which, if insisted upon, would invalidate the contract from its very inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with the known facts, and the insurer is estopped thereafter from asserting the breach of such conditions.

2. INSURANCE—AGENT'S KNOWLEDGE IMPUTED TO INSURER.—Knowledge affecting the rights of the insured, such as matters relating to the state of his health, which comes to the agent of the insurer while he is performing the duties of his agency, in receiving appli-

cations for insurance and delivering policies, becomes the knowledge of the company.

3. INSURANCE—INSTRUCTIONS APPROVED.—Issues in an action on a life insurance policy as to whether insured was in sound health at the date of the application and delivery of the policy and whether insured had knowledge of the state of his health, *held* correctly submitted to the jury.

Appeal from Pulaski Circuit Court, Second Division; *Richard M. Mann,* Judge; affirmed.

*J. C. Marshall,* for appellant.

*Downie & Schoggen,* for appellee.

WOOD, J. This is an action by Laura S. Hale against the American National Insurance Company on two policies, one dated March 24, 1924, for $240, and the other dated October 6, 1924, for $94. The insurance company defended the action on the ground that the assured was not in sound health at the time the policies were issued. It was in evidence, and not denied, that the policies had been issued and delivered by the agent who took the application for insurance, and the premiums had been paid. The appellee testified that, at the time the applications were made and the policies delivered, there was nothing the matter with the assured. Previously he had had high blood pressure. It was discussed with the agent. The insured communicated this fact to the agent at the time of the application, and the agent replied that it did not matter—that he had had high blood pressure himself. The. assured looked healthy. He was working every day, and his health was fine at the time the policies were delivered. The assured had been treated for high blood pressure between the time of the issuance of the first policy and the last. This fact was communicated to the agent when he took the application for the second policy, and the agent stated that that did not amount to anything. The medical examiner for the insurance company testified that he made a careful examination of the physical condition of the insured in November, 1923. At that time the assured was suffering from an incurable disease—chronic nephritis, or Bright's

disease. He reported that fact to the company, and recommended that the policy be not issued. The policies sued on were issued without a medical examination. The company did not require it. The life insurance under these policies was for a small amount, and is paid weekly. Other testimony on behalf of the company tended to prove that the insured, at the time the policy was issued, was not in sound health.

The application for the policies contained a provision to the effect that the insured warranted that the answers to the questions in the application were complete, correct and true, to the best of his knowledge and belief, and made these answers a part of the contract of insurance. The application further contained a provision that none of the officers or agents of the company were authorized to make, order, or discharge the insurance contracts, or to waive forfeitures.

The court, over the objection of the insurance company, on its own motion instructed the jury that, if they found that the deceased was not in sound health and that the agents of the defendant had knowledge of such fact, which knowledge they had obtained in the scope of their employment, then the defense of unsound health would not be available, and their verdict should be for the plaintiff; but, if they found that the insured was not in sound health, and the agents of the company, acting within the scope of their employment, had no knowledge of such fact, then the verdict should be in favor of the defendant. The insurance company asked the court to instruct the jury that, if the insured was not in sound health on the day the policies were issued, their verdict should be in favor of the defendant, even though the jury should find that the agents of the company knew that he was not in sound health when the policy was issued. The company duly excepted to the ruling of the court in refusing its prayer for instruction, and in giving instruction as above set forth on its own motion. The jury returned a verdict in favor of the plaintiff, and from a judgment rendered in her favor is this appeal.

In the case of *National Life Insurance Co. of U. S. A.* v. *Jackson,* 161 Ark. 597, 256 S. W. 378, there was a provision in the policy to the effect that "no liability is assumed by the company for any accident, illness or disease incurred or contracted prior to the date hereof, or any death arising therefrom." The testimony in that case tended to show that the insured died from tuberculosis. He had been afflicted for several months prior to the date of the issuance of the policy, and there was testimony from which the jury might have found that the agent of the insurance company had knowledge of the fact that the insured was sick at the time he took the application. But there was no testimony tending to show that the agent of the insurance company knew that the insured was afflicted with tuberculosis at the time of the issuance of the policy. On the contrary, the agent who took the application testified that he did not know that the insured had tuberculosis at the time he applied for the policy or at the time the policy was delivered to him. He further testified that, if he had known this fact, he would not have taken the application, and that there was nothing in the physical appearance of the insured to indicate that he had tuberculosis. Commenting upon the instruction given in that case, in view of the facts disclosed, we condemned the instruction, and, in doing so, stated:

"It is true that the general rule of law imputing to a principal notice of facts learned by his agent in the discharge of his duties applies to insurers; but this principle has no application under the terms of the policy sued on. As will be seen from our statement of facts, one of the conditions of the policy is that no liability is assumed by the company for any accident, illness or disease occurring or contracted prior to the date thereof, or any death arising therefrom."

This court correctly condemned the instruction in the case of *National Life Insurance Co. of U. S. A.* v. *Jackson, supra,* because there was no testimony to sustain it, and further correctly held that there was no

liability under the contract of insurance in that suit because of the particular language of the contract, and because the undisputed evidence showed that the insured had tuberculosis at the time the policy was applied for and was issued, and that he died from that disease. But we did not mean to hold in the above case that the provisions in a policy such as we now have under review could not be waived. There was nothing in the facts of the above case to warrant this court in announcing a doctrine contrary to the rule recognized by this court in the above case and many other cases and by the authorities generally. That rule is as follows:

"Where an insurer, at the time of the issuance of a policy, has knowledge of existing facts which, if insisted upon, would invalidate the contract from its inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with such facts, and the insured is estopped thereafter from asserting the breach of such conditions." *Life & Cas. Ins. Co.* v. *King,* 137 Tenn. 885, 195 S. W. 585.

The cases of *Carland* v. *General Accident, Fire & Life Assurance Corp.,* 122 Ark. 468, 183 S. W. 965, and *American National Insurance Co.* v. *Otis,* 122 Ark. 219, 183 S. W. 183, were both cases where there was no waiver or estoppel by acts and conduct of agents of the insurer, and it is expressly so stated in the opinions. In the other case of *Metropolitan Life Ins. Co.* v. *Fitzerald,* 137 Ark. 366, 209 S. W. 77, cited in *National Life Insurance Company of U. S. A.* v. *Jackson, supra,* the question of waiver and estoppel by conduct on the part of the agents of the insurance company was not involved; and these cases were not cited in the *National Insurance Co.* v. *Jackson,* above, on the question of waiver and estoppel. Counsel for appellant also cite the cases of *Insurance Co.* v. *Howle,* 62 Ohio, St. 204, 56 N. E. 508; *Murphy* v. *Ins. Co.,* 106 Minn. 112, 118 N. W. 355; *Ins. Co.* v. *King,* 137 Tenn. *supra; Gallant* v. *Ins. Co.,* 167 Mass. 79, 44 N. E. 1075; and *Packard* v. *Ins. Co.,* 72 New Hamp. 1, 54 A. 287, as sustaining their contention that the provision of the

policy under review as to sound health at the time of the issuance of the policy cannot be waived; but these authorities, as we read them, do not sustain this contention. On the contrary, they recognize the general rule of waiver and estoppel as above set forth.

The above doctrine of waiver and estoppel, quoted from the syllabus of the case of *Ins. Co.* v. *King, supra,* has been too firmly imbedded in our law and is too well grounded in reason and justice to be overruled, modified or impaired by announcing any doctrine to the contrary. Since the language quoted from *National Life Ins. Co.* v. *Jackson, supra,* can be construed to have that effect on policies like that under consideration, we hereby disapprove the same. In the early case of *Ins. Co.* v. *Brodie,* 52 Ark. 11, 11 S. W. 1016, this court, speaking through Mr. Justice BATTLE, said:

"The issue of a policy by an insurance company, with a full knowledge or notice of all the facts affecting its validity, is tantamount to an assertion that the policy is valid at the time of its delivery, and is a waiver of the known ground of invalidity. From such conduct the insured might fairly infer that he is protected."

In *American National Ins. Co.* v. *Otis, supra,* we said:

"This court has often held that the doctrine of waiver and estoppel applies to insurance contracts, and that these principles will be liberally applied when it is necessary to prevent injustice and fraud being perpetrated by insurance companies upon their policyholders, when the latter have been misled or imposed upon by such companies."

We have held that the general rule above stated of waiver and estoppel applies to knowledge acquired by soliciting agents. In *Blacknall* v. *Mutual Aid Union,* 129 Ark. 450-455, 196 S. W. 792, we quoted from 14 R. C. L. § 340, p. 1159, as follows:

"It is usually held that, in the absence of policy provisions to the contrary, knowledge affecting the rights of the insured, which comes to an agent of an

insurance company while he is performing the duties of his agency in receiving applications for insurance and delivering policies, becomes the knowledge of the company.'' See numerous cases there cited, and also *Ins. Co.* v. *Rideout,* 147 Ark. 563, 228 S. W. 55; *Walker* v. *Ill. Bankers' Life Asso.,* 140 Ark. 192, 215 S. W. 598; *Amer. Ins. Co.* v. *Mordic,* 168 Ark. 795, 271 S. W. 460.

It follows from the doctrine of these cases that the court did not err in giving the instructions on its own motion and in overruling appellant's prayer for instruction. The issue as to whether or not the insured was in sound health at the date of the application and delivery of the policy was correctly submitted to the jury. The jury was also correctly instructed to the effect that, if they found that the insured was not in sound health at the time of the application and delivery of the policy, and the appellant had knowledge of that fact, the verdict should be in favor of the appellee.

We find no error in the rulings of the trial court, and its judgment is therefore affirmed.

SMITH and KIRBY, JJ., dissent.