FIDELITY & DEPOSIT COMPANY OF MARYLAND *v.* CUNNINGHAM.

Opinion delivered May 26, 1930.

*John A. Luhn, Chas. H. McComas, W. E. Beloate* and *Horace Chamberlin,* for appellant.

*W. A. Cunningham* and *G. M. Gibson,* for appellees.

Butler, J. For a history this case reference is made to the opinion in the case of *Fidelity & Deposit Company of Maryland* v. *Cunningham,* 177 Ark. 638, when the case was first here on appeal. There are 1,862 pages of typewritten matter in the transcript now before us, and the abstract and briefs of counsel contain 933 pages. With a record of this magnitude it is impracticable to do more than briefly review the most salient features of the testimony and only such as are necessary for an understanding of the points raised in this appeal, and this will be done as we proceed with the discussion of the questions involved.

On the first appeal this court held that the case should have been transferred to the chancery court. On remand, this was done, and a special master was appointed to take the testimony and make certain findings. The appellant challenges this appointment on the ground that the term of court had lapsed on the date of the appointment. It is unnecessary for us to determine whether or not the court was legally in session on July 23d, for to render the appointment of the master valid it is not necessary that the same be made on a day of the court.

Crawford & Moses' Digest, § 1364 (Act of April 16, 1873, at which time the circuit court sat in chancery) provides that the clerk of the circuit court shall be ex-officio master or commissioner, and § 1365 provides that the *"judge* may appoint any other person master or commissioner in special causes in said court." Therefore, the appointment of a master by the judge in vacation would be a valid appointment.

It is contended also that the appointment was premature and too extensive. The objection interposed at the time of the appointment was not that it was premature, but for the reason that the court was not in session and that the order was *coram non judice.* We do not think that the appellant was shown any prejudice by reason of the premature appointment, if it was such, or the powers with which the master was clothed.

During the taking of the testimony the chancellor was called by the appellant to testify as to a certain matter, and for that reason his disqualification was suggested, which was overruled. This was a matter within the discretion of the chancellor. Section 4193, Crawford & Moses' Digest. We cannot see anything in the record which would warrant us in concluding that there was any abuse of discretion in the refusal of the judge to disqualify. The testimony given by him was entirely favorable to the appellant on the matter about which he was called, and the fact testified to by him might well have been proved without calling him as a witness.

There are two main questions in this case. The first is presented by the appellant's exceptions numbered 22, 31, 41, 45 and 46. By these the position is taken that the evidence demonstrated that the liability of the appellant on its bond was canceled by the conduct of the appellees. The second question is raised by exceptions 19, 20 and 23, where the contention is made that there was no embezzlement by Neil Cole of the funds coming into his hands as collector of revenue during the year 1926 for the taxes of 1925.

1. Neil Cole, as collector of revenue for Lawrence County, made the bond required by statute with the appellees as his sureties on the bond. The bond sued on was executed by the appellant to indemnify the appellees against any liability on their part as sureties for the larceny or embezzlement by Cole of any of the revenue collected by him. This bond imposed upon the assured, or any of them, the duty, on becoming aware of any act which might be made the basis of any claim thereunder, to immediately give the insurer notice; and, further, that there should be no liability under the bond for any act of embezzlement or larceny committed by the principal after the assured, or either of them, should become aware of any act of Cole which might be made the basis of a claim. The execution of the bond avoided liability under the bond previously made. It is insisted that the appellees were well aware of these conditions which were identical with those of the previous bond executed by the appellant for their protection against the larceny or embezzlement by Cole for the collection of taxes for the year 1924 in the year 1925, and that at the time of the execution of the bond sued on the appellees knew that Cole had embezzled funds collected by him for the taxes of the year 1924; that after the execution of the bond the appellees knew that Cole was embezzling tax moneys collected for 1925 and applying the same to a private obligation of his own; that, knowing these facts, the appellees, or any of them, failed to give any notice to the appellant company of such larceny and embezzlement within the time stipulated in the bond or at any other time, and that therefore the bond became void and unenforcible. If the evidence established the facts contended, the position of the appellant would be well taken and there would be no liability.

There is but little conflict in the evidence. The dispute is not so much as to what the witnesses testify, but rather what are the proper inferences reasonably deducible therefrom. The appellant contends that the cor-

958

rect inference establishes its contention while the appellees insist that the true inference to be drawn is that the acts of Cole and the appellees are consistent with honesty of purpose and conduct.

Briefly stated, the facts are as follows: H. L. Ponder was the local agent for the appellant company in the city of Walnut Ridge. The bonds, and the one in suit, were all written on the application of Neil Cole and the favorable recommendation of Ponder, who was not only the local agent of the appellant, but also a stockholder and officer in the Planters' National Bank, a banking corporation doing business in said city. On a Sunday in August, 1924, the day before Mr. Cole's settlement with the State for the taxes collected for the year 1924, he approached Mr. Ponder and informed him that he (Cole) lacked approximately $8,000 of having enough money with which to make his settlement, and stated as a reason that certain taxpayers, whose tax receipts had been issued and held by him on their promise to pay same in time for him to make his settlement, had failed to pay as promised. He requested Mr. Ponder to help him secure the money needed, and told Ponder at the time that he had certain collateral consisting of amounts due on the tax receipts before mentioned, notes due for automobiles sold, and county scrip. Ponder undertook to secure, if possible, the money needed, and on that afternoon interviewed the officials of the Planters' National Bank, at which the understanding was reached that the bank would advance the money required. At that time Cole was in the automobile business, and had borrowed from the bank his limit under the rules governing the credit to be extended to any one of Cole's business rating. Cole, on this account, procured three of his friends who undertook to, and did, execute to the bank three notes aggregating the sum required, which notes were indorsed by Clarence Whitlow, whose name made the risk acceptable to the bank. To secure Whitlow for the indorsement, Cole surrendered to him the unpaid

tax receipts, the automobile notes and the county scrip, with the agreement that Whitlow should collect these and apply the proceeds to the payment of the three notes. This transaction was had early on the morning of the day on which Cole was to make his settlement, and the money or its equivalent was paid to him in time for him to catch the train to Little Rock. From these facts the conclusion is drawn that Cole was an embezzler of the 1924 revenue, and that Ponder and those of the appellees who were officers of the Planters' National Bank were made aware of the same and aided him in concealing it; and further that subsequent facts demonstrated that Cole embezzled a part of the 1925 revenue with the knowledge and approbation of the officers of the Planters' National Bank, and that the sums so embezzled were applied to the payment of the money procured by Cole to cover up his defalcation for the preceding year.

The evidence relied on to establish this last proposition may be thus stated: Clarence Whitlow was one of Cole's deputies and he, with W. F. Rowsey, another deputy, were the ones designated to, and who did, carry the tax books through the county to make collections at the various voting precincts, after which the books were returned to the collector's office, from which the taxes were collected for the balance of the time in which taxes were payable during the year 1926. On the flyleaf of one of the books carried around by the said deputies were various notations, among which was a series headed "Planters' Bank," showing deposits made in said bank beginning January 9, 1926, continuing through that month and until February 11, 1926. These deposits aggregated approximately $4,318.88. Opposite each sum was the notation "on note." The records of the Planters' Bank disclosed that on or about the dates noted on the flyleaf there had been deposited by Clarence Whitlow like amounts which were applied as credits on the three notes executed the preceding August for the benefit of Neil Cole. The appellant draws the inference that these

sums represented taxes collected, and that there was a diversion of these funds and a payment made with them to the personal obligation of Cole to the bank, evidenced by the notes of his three friends, which amounted to an embezzlement by Cole of said funds, and that the appellees had knowledge of this. It was admitted by Whitlow that he did, in fact, pay those sums on the notes before mentioned, but he testified that these funds were not tax moneys but were collected by him while making his rounds as deputy tax collector from persons who had not paid Cole for the taxes of 1924 and from other collateral deposited with him when he indorsed the three notes, *supra,* and with these funds and money borrowed by him he discharged the same. The officer of the bank who received these deposits testified that he had no knowledge that they were 1925 taxes and assumed that they were not, but that they were collected by Whitlow from the said collateral.

It is further contended by the appellant that the evidence shows that H. L. Ponder, at about the time of the execution of the three accommodation notes, gave the bank to be used by Cole a check for $6,973.40, which he had in his possession. This check was one of the Missouri Pacific Railway Company, which had been sent to Ponder to pay a judgment against the railway company. The circumstances relied upon to support the appellant's contention as to Ponder's conduct aforesaid is that the bank handled this check through a Little Rock bank so that Cole, in fact, secured its proceeds with which to make his settlement. The evidence shows that Ponder deposited this check in the Planters' National Bank, and was given credit for it on his account. The check was handled in the regular way by the bank, and, even though the proceeds of this check might have been given to Cole, the chancellor saw nothing unusual in the handling of this transaction. Nor do we. A witness testified that Ponder told him he had loaned Cole $............... of the railroad's money. This was disputed by Ponder,

and it is undisputed that in due time Ponder paid the judgment for the railway company.

To further support the first contention, appellant insists that Cole was overdrawn at the Lawrence County Bank in the sum of $2,702.41 from August, 1925, to January, 1926; that a number of the appellees who were officers of the Lawrence County Bank concealed this fact, and that it was their duty to acquaint the appellant of this overdraft at and before the execution of the bond sued on, the inference being that said overdraft was a shortage and embezzlement of tax funds collected by Cole for the year 1924. The testimony of the cashier of said bank was to the effect that there was in fact no overdraft, but the apparent overdraft was caused by his failure to credit Cole's account with the amount of certain tax receipts, and to charge the same to the account of Mr. J. G. Richardson, the president of the bank, whose tax receipts they were. As a further fact tending to establish the guilty knowledge of the appellees as to the alleged defalcation of Cole, the appellant endeavored to show that Cole's collectors bond for the year 1925 covering the 1924 taxes was circulated by J. G. Richardson, president of the Lawrence County Bank, and sureties thereon solicited, and that at that time Richardson gave as an explanation of his interest in the matter that Cole was short in his accounts for the taxes previously collected, but that the sureties on the bond which he was then endeavoring to have made would be protected because an indemnity bond was to be obtained from the appellant company. At the time the testimony relative to this incident was given Richardson was dead, and the testimony was in conflict.

The bond in this case was executed at the request of Cole and on the recommendation of Ponder. Ponder at that time had not been a surety on Cole's previous bond which had also been executed by the appellant company at Ponder's request, but later on Ponder did become a surety on the 1926 bond. The evidence does not show

that any one else among the sureties on Cole's last bond in any way solicited the appellant to execute the bond involved in the instant case.

In order to absolve the appellant from liability on the contentions above made, two facts must have existed: first, that Neil Cole was an embezzler at the time of the execution of the bond in the instant case of a part of the 1924 revenue, or that, after the execution of the bond he embezzled a part of the 1925 revenue and applied the last sums embezzled to the payment of the first; and, second, that the appellees were aware of such embezzlements and did not notify the appellant company of such fact.

The effect of the finding and decree of the chancellor is that the evidence did not warrant a finding that either of the facts existed. The chancellor might have thought that the evidence showed merely an ill-considered confidence on the part of Cole in others and negligence in the discharge of his duties, but not a moral delinquency, and that there was no circumstance to warrant the finding that the appellees, or any of them, if any embezzlement existed, knew of same or that the facts were sufficient to put them on inquiry. It is our opinion that the finding of the chancellor was not against a preponderance of the testimony, and that the provision in the bond requiring the appellant to be notified of any act which might be made the basis of any claim did not require any notice under the facts as found by the chancellor. Under the terms of a bond indemnifying the assured against the larceny or embezzlement of the principal and requiring notice by the assured to the insurer on their becoming aware of same, to render the notice necessary, more than mere suspicion is required; circumstances must have existed and been known by the assured, which would have induced the belief in an ordinarily prudent person that a larceny or embezzlement had been committed. *American Surety Co. of N. Y.* v. *Pauly,* 170 U. S. 133, 18 S. Ct. 552. As the appellant was not liable for any

act of Cole short of embezzlement or larceny, it was unnecessary, under the terms of the bond, to notify the appellant of any negligence or unbusinesslike methods of Cole, although these might have ultimately created a condition causing larceny or embezzlement, where such negligence is not reasonably attributable to moral turpitude and dishonesty. *Long Bros. Grocery Co.* v. *U. S. F. & G. Co.*, 130 Mo. Appeals 421, 110 S. W. 29; *Pacific Fire Ins. Co.* v. *Pacific Surety Co.*, 93 Calif. 7, 28 Pac. 842; *Gilbert* v. *State Ins. Co.*, 3 Kan. Appeals 1, 44 Pac. 442.

2. The contention that Cole was not an embezzler of the revenue of 1925 rests also upon a question of fact. In the case of *Fidelity & Deposit Co.* v. *Cunningham, supra*, on evidence substantially the same as that in the instant case, this court held that the facts were sufficient to sustain the finding that Cole was an embezzler. It cannot be gainsaid that Cole did not collect large sums of the 1925 revenue for which he has not accounted or given any reason for not doing so. There was a conference at which Cole, a number of the appellees, and the representatives of the appellant company were present at which conference the amount of Cole's shortage was discussed, and it was approximated that at that time such shortage amounted to more than $30,000. There is some dispute as to what Cole's admissions were during the conference, some of the witnesses stating that the agent for the appellant asked Cole if he had embezzled this money, and that Cole answered in effect that he had. Other witnesses denied this, but it is practically undisputed that Cole admitted that he had spent the money— if not all, at least a part of it. It is immaterial as to whether or not Cole admitted in so many words that he was an embezzler. The fact that he received the money in his official capacity and appropriated the whole or any part thereof to his own use for any purpose was sufficient to constitute the crime of embezzlement. *Russell* v. *State*, 112 Ark. 282, and cases there cited. We are of the opinion that the finding of the trial court that Cole,

964

the principal, had embezzled sums for which the appellant was liable under its bond was sustained by the evidence in the case.

3. The trial court, having found that Cole had embezzled the public revenue, and that the appellant was liable on its bond, the question next arises, what was the extent of this peculation and appellant's liability? Appellant contends that Cole, the principal, and his sureties, the appellees, failed to furnish the data deemed necessary for a determination of the facts and that its motion for an audit of the accounts of Cole with the ten banks of Lawrence County was denied, and therefore it was unable to collect and present the facts to the court. The appellant's motion for an audit was so sweeping in its terms that, if granted as requested, it would have given it the privilege to range at will through the records of these banks covering a period of four years, three of which were prior in time to the year covered by the bond. This motion was overruled, but an order was made for the production by Cole of all documents of every description relating to the "performance of his duties as tax collector" and to the banks to produce certified copies of all transactions had with Neil Cole in his individual capacity or as tax collector during the years 1923, 1924, 1925 and 1926, and that "they hold all originals of such accounts, books, papers and evidence subject to the inspection of the parties interested in this case under the personal supervision of the master at such times and places as he may designate." This was a reasonable order, and if during the course of appellant's investigation it might have deemed it necessary to examine any specific record or account, it might have so requested.

Cole and the banks complied substantially with this order, and appellant's accountant proceeded from these documents and the public records to make an audit of the various transactions of Cole with the said banks, and stated an account showing the amount and extent of Cole's liability. It does not appear that in the course

of the audit any request was made for an examination of any particular book account or document, the appellant contenting itself with the request first made and resting on its objection and exception then saved. It appears that with the information furnished appellant's accountant was enabled to, and did, make a comprehensive audit sufficient to convince appellant that there was no embezzlement, and that the appellees, in paying the alleged default to the State and improvement districts, had been overreached, and that the true amount really unaccounted for by Cole was negligible, to-wit, the sum of $2,235.94, whereas the appellees had paid to the State and improvement districts sums aggregating $30,843.20. From the testimony and audit made by the accountant and the exhibits made by the banks of their records, able counsel has drawn the deduction that Cole had deposited much larger sums from revenues collected with the various banks than appeared credited to him on the accounts rendered, and that various items charged against him on his settlement had either not been collected or had been properly accounted for without corresponding credits, and that the net amount unaccounted for was the small sum before stated.

In conflict with the testimony and audit was the audit of an accountant furnished by the State Auditorial Department at the instance of the appellees, which accountant was later appointed by the master to complete the audit; also, the testimony of the cashiers of the several banks and the explanations made by them as to the true purport of certain deposit slips and other records which they testified appellant had misinterpreted. After hearing the evidence in the case, the trial court found against the contentions of the appellant as to the items properly charged to Cole and unaccounted for by him, and with slight modifications, sustained the findings of the master. Able counsel for the appellant has made a most searching and exhaustive analysis of the evidence and his deductions based on such and the attending cir-

cumstances are persuasive, but it is our opinion that the contrary conclusions reached by the trial court are supported by the preponderance of the evidence except as to two items. Respecting these the evidence falls short in its probative force, and fails to establish an embezzlement on the part of Cole.

(a) On the 12th day of June, 1926, and continuing until the 23d day of September, 1926, there was on deposit in the Citizens' Bank of Imboden to Cole's credit as collector, the sum of $6,625.30, and in making his last settlement Cole drew a check against this amount in favor of the State Treasurer for $5,526.08. This check was presented to the Bank of Imboden on a date prior to September 8, 1926, and payment was refused. The bank attempted to justify its action by saying that Cole was indebted to the Lawrence County Road Improvement District in a sum equal to, or greater, than the amount of Cole's deposit and for which a check had been drawn on July 12, 1926, and which had not been paid for the reason that it was drawn for a greater sum than Cole had in the bank at that time. It is admitted that Cole had paid the proper official of the road improvement district all of the revenue due it collected by him in 1926 for the year 1925, and the amount claimed as still due the Road Improvement District was for revenue due it for the year 1924. But it is also shown that on July 12th Cole drew a check in favor of the secretary of the Road Improvement District for the sum of $5,526.08, the amount claimed for the taxes unpaid for 1924 on the Bank of Strawberry, and this check was duly paid. From this it appears doubtful if there were any back taxes due the improvement district on the date of the presentation of Cole's check in favor of the State Treasurer, and, even if there were, we do not think that under the circumstances the People's Bank of Imboden was justified in refusing to pay the check in favor of the State Treasurer. It is singular that the alleged check of Cole in favor of the improvement district should have

remained on file from July 12, 1926, until September 23 following. The naive explanation given by the cashier for not paying the check drawn in favor of the State was that "we would be doing a favor like for the Western Lawrence County Road District. They carried their money in our bank, and our money was very precious to us at that time, and, rather than pay out this $5,500 that would go to Little Rock, I took a chance of favoring the road district in order to retain that deposit." The money in the People's Bank of Imboden was for revenue collected for the year 1925, and, as Cole was endeavoring to make a proper payment to the State Treasurer, there was clearly no embezzlement of that fund because of the wrongful action of the bank, and therefore the appellant is not liable for this amount under the terms of its bond.

(b)   On the 21st day of August, 1926, Neil Cole, as collector, drew his check on the Planters' National Bank of Walnut Ridge, Arkansas, in favor of the secretary of the Black Spice Drainage District in the sum of $2,514.95. This check was deposited in the Bank of Alicia, and in the due course of business was transmitted to the First National Bank in St. Louis by which it was sent to the Lawrence County Bank, its correspondent. The check bears the indorsements "Lawrence County Bank, Walnut Ridge—Paid August 25, 1926," and "Planters' National Bank, Walnut Ridge, Arkansas— Paid August 26, 1926." The check was returned to the Bank of Alicia, and has attached to it a debit memorandum charging the check back to the drainage district. Accompanying the check was the alleged certificate of a notary public certifying that the check was presented to the Planters' National Bank and payment refused because the account of Cole was closed. This certificate bears date of August 24, 1926. The individual whose name was signed to the protest as notary public testified that the same was a forgery. The cashier of the Planters' National Bank testified that the account of Neil Cole as collector was closed on August 25, 1926, and that its

records do not show that this check had ever been handled by it. But there is no explanation given by the cashier or any one else as to why the check should have borne the customary indicia denoting payment, nor is there any explanation given or attempted for the alleged protest or the forgery.

In view of these singular circumstances and the connotation implicit in the total failure to make any explanation regarding them, we are led to the conclusion that it cannot be said that the facts warranted a finding that this fund was embezzled by Cole, and that, while it is probable there is a mistake somewhere, it is equally as reasonable to assume that it was the mistake of someone else other than Cole, and that he should not be charged with having embezzled the amount of this check. Especially as at this time Cole's extremity both with respect to his public liability and his personal obligations was beginning to be known, and it was then "let him save himself who can."

4. Throughout the argument and brief of appellant are many exceptions to the conduct of the master and the rulings of the chancellor and to items of cost allowed and his rulings on the matters raised by the appellant's cross-complaint. It is impracticable to review each of these, nor do we think a discussion of their merit would serve any useful purpose. Owing to the length of the record and the involved accounts contained therein, a correct consideration and determination of all the questions presented is most difficult. However, when due weight is given to the rulings and findings of the chancellor, we cannot say that his discretion has been abused, or that his findings are erroneous except in the particulars above mentioned. As to those, the decree will be modified, giving credit on the judgment for the sum of the two erroneous charges against Cole as to the Western Lawrence County Improvement District and the Black Spice Drainage District, and, as modified, the decree will be affirmed.

KIRBY, J., dissents.

McHANEY, J. I dissent from the findings and conclusions of the court as to the two items last mentioned in the opinion. It is my opinion that the case should be affirmed as a whole, and not reversed in part. Mr. Justice HUMPHREYS agrees with me in this regard.