BRIDGE TIRE COMPANY *v.* MASSACHUSETTS BONDING & INSURANCE COMPANY.

4-3532

Opinion delivered October 1, 1934.

*Warner & Warner,* for appellants.

*Joseph R. Brown* and *Beloate & Beloate,* for appellees.

JOHNSON, C. J.   This action was instituted by appellants, Bridge Tire Company, Roy M. Johnston and Ben B. Johnston, against appellees, Massachusetts Bonding and Insurance Company and R. E. Patterson, to enforce an alleged liability for dishonest use and misapplication of funds, merchandise and personal property belonging to appellants and to establish liability against a fidelity bond executed by appellee, Bonding & Insurance Company, by the terms of which appellants were indemnified against dishonest misuse of funds and property by Patterson amounting to larceny or embezzlement.   The fidelity bond provides:

"Whereas, Ray E. Patterson, Fort Smith, Arkansas, hereinafter called the 'employee,' has been employed as manager by Bridge Tire Company, Fort Smith Arkansas, hereinafter called the 'employer,' and has been required to furnish a bond for his honesty in the performance of his duties in the said position.

"Now, therefore, in consideration of a premium paid for the period from the 1st day of March, 1928, to the 1st day of March, 1929, at twelve o'clock noon, it is hereby agreed that, subject to the conditions set forth in this

bond, the Massachusetts Bonding & Insurance Company hereinafter called the 'surety,' shall within three months next after proof of loss has been furnished to it, as hereinafter set forth, reimburse the employer to an amount not exceeding five thousand and 00/100 dollars ($5,000), for such pecuniary loss as the employer shall sustain of money, securities or other personal property belonging to the employer or for which the employer is responsible, by any act or acts of larceny or embezzlement on the part of the employee while in the performance of the duties of the office or position in the service of the employer as hereinbefore stated, and which shall have been committed during the life of this bond and discovered within six months after the expiration or cancellation thereof, or within six months after the death, dismissal or retirement of the employee from the service of the employer prior to such cancellation, subject to the following express conditions, which shall be conditions precedent to any recovery hereunder.''

The chancellor, after hearing the evidence, found as follows:

''The court finds that there was no effort of defendant, Patterson, to cover up or disguise any of his acts or transactions; that he was negligent and exercised poor judgment, but that not one of the items of shortage sued for is impressed sufficiently with dishonesty or fraudulent intent on defendant Patterson's part to constitute either larceny or embezzlement, as used in the terms of the bond sued on. It is therefore considered, ordered, adjudged and decreed that plaintiff's complaint be dismissed for want of equity, and that defendants recover their costs herein.''

The undisputed evidence reflects that, beginning in the year 1928, Mr. Patterson, the manager of appellants business in Fort Smith, began paying his personal obligations from his employer's funds. For instance, on January 23, 1929, he paid to Sutton Chevrolet Company, out of his employer's funds, $33.50 and charged this item upon the books of his employer to ''service auto expense,'' when the fact was and is that this was a payment on his personal automobile and a discharge of his

individual liability. On January 4, 1929, Patterson paid to Stein Wholesale Dry Goods Company $6 out of his employer's funds and charged it upon his employer's books as "sundry expense," when the fact was this item represented the purchase price of one pair of blankets purchased for Patterson's personal use. On December 12, 1928, Patterson paid out of his employer's funds to Morris Morton Drug Company, $16.50 and charged same on his employer's books to "sundry expense," when in truth and fact this item represented the purchase price of one tea set purchased for Patterson's individual use. On August 10, 1931, Patterson paid out of his employer's funds the sum of $13.55 to Armour & Company and charged same on his employer's books to "sundry expense," when in truth and fact the charge was for a bill of groceries purchased and used by Patterson personally. On May 17, 1932, Patterson deducted $9.10 from his gross pay roll and charged this item to cash disbursements and never accounted to his employer therefor. The items just referred to will serve to show the trend of all transactions complained of and the kind and character of testimony which the chancellor construed as being insufficient to warrant a finding of liability against the fidelity bond.

The fair and reasonable construction of the fidelity bond is that the bonding company guaranteed the honesty and fidelity of Patterson in performance of his duties as employee to his employers against furtive or dishonest misuse for his own benefit of funds or property placed in his custody amounting to larceny or embezzlement. *Equitable Surety Co.* v. *Bank of Hazen,* 121 Ark. 422, 183 S. W. 743; *U. S. F. & G. Co.* v. *Bank of Batesville,* 87 Ark. 348, 112 S. W. 957; *Fidelity & Deposit Company of Maryland* v. *Cunningham,* 177 Ark. 638, 7 S. W. (2d) 332; *Fidelity & Deposit Company of Maryland* v. *Cunningham,* 181 Ark. 954, 28 S. W. (2d) 715; 19 Cyc. 518, and cases there cited.

It is true we held in *U. S. F. & G. Company* v. *Bank of Batesville, supra,* and other subsequent cases that fidelity bonds restricted by their terms to larceny or embezzlement of the employee did not cover every loss

which might be sustained by their employer, but when the loss is due to dishonest misuse or dishonest misapplication of the funds or property by such employee which amounts to larceny or embezzlement when used in their generic sense as distinguished from a criminal technical sense, liability should and does follow.

Neither can we agree that this fidelity bond does not cover the losses due to Patterson's dishonest misuse of the funds, because he was a partner and interested in the business, because the insurer was fully advised of this fact prior to executing the bond, and it will not now be heard to say that it is not liable thereon, thereby nullifying its obligation from its inception. *American National Ins. Co.* v. *Hale,* 172 Ark. 958, 291 S. W. 82; *Travelers' Protective Ass'n of America* v. *Stephens,* 185 Ark. 660, 49 S. W. (2d) 364; *Metropolitan Ins. Co.* v. *Minton,* 188 Ark. 456, 66 S. W. (2d) 627; 14 R. C. L., p. 1166, and cases there cited.

Next appellees urge that the chancellor's finding of no liability against appellees should not be disturbed because not against the preponderance of the evidence. As heretofore pointed out, Patterson's liability for practically all, if not all, the items in controversy were admitted by him, but he seeks to avoid responsibility therefor by showing that he reimbursed his employers for the funds and merchandise dishonestly misused and misapplied. The burden of showing reimbursements was upon Patterson and the insurer, and, after most careful consideration of all the testimony introduced, we have come to the conclusion that appellees have not discharged this burden. True, Patterson and his wife say they have reimbursed the employer for all misused and misapplied funds and merchandise, but no receipts, vouchers, proof, canceled checks, book entries or other corroborating facts or circumstances are offered in support of their general statements of reimbursements, and we are unwilling to accept their general statements as proof sufficient to overcome the *prima facie* case made by appellants.

We now proceed to the only remaining question, the amount to which appellants are entitled to recover. The general course of dealings by Patterson with the prop-

erty and funds intrusted to his care and management is exemplified by the items heretofore set. out, and we shall deal with all remaining items in a general way only tested by the rules of law heretofore stated. The aggregate of all items falling within the rule stated is $3,413.67, and judgment should have been rendered for this sum in the lower court.

For the reason stated, the cause is reversed, and judgment will be entered here in favor of appellants, and against appellees for the amount indicated.