NATIONAL MUTUAL CASUALTY COMPANY *v.* CYPRET.

4-7299                                        179 S. W. 2d 161

Opinion delivered March 27, 1944.

*R. W. Tucker,* for appellant.

*Northcutt & Northcutt,* for appellee.

SMITH, J. A. J. Cypret, doing business as the Cypret Motor Company, sold an automobile to Earl Mabe, and in part payment thereof took a note dated February 24, 1941, from Mabe, payable to the Bank of Thayer, Missouri, for the sum of $243.93, payable in eleven equal monthly installments, and to secure this note Mabe gave a mortgage to the bank on the automobile and on a horse and a cow. The motor company financed most of its credit sales of cars through this bank, which credited purchase money notes for cars to the motor company's account, with the understanding that any notes not paid by the purchasers of the cars should be repurchased by the motor company.

As an incident to the sale of the car Mabe made application on the day he signed the note above mentioned to the National Mutual Casualty Company for insurance on the car, on which application an insurance policy was issued, which recited that the ''coverages afforded'' were ''The interest of Bank of Thayer, or assignees thereof, herein called the 'named insured' in the automobile described in the policy designated above is insured against loss or damage, hereinafter called loss, caused by fire or theft occurring while the automobile is in the lawful possession of the purchaser or borrower under a conditional sale; mortgage, lease or lien agreement.'' Liability under the policy was limited to any balance due on the note above mentioned. The policy required proof of loss to be made within 60 days after its occurrence.

Within about a month after the policy was issued, Mabe disappeared, and with him went the automobile,

and nothing was heard of him until some time in August, 1941, when he was arrested at Flagstaff, Arizona, and returned to Fulton county, where the mortgage was of record, and there placed on trial for removing mortgaged property from the state. The record does not show the disposition of this case, or what became of Mabe after his trial.

On April 21, 1941, the cashier of the bank wrote the insurance company a letter advising that Mabe had left Fulton county where the sale of the car was made, and had taken the car with him and that ''They are on the hunt for him and the car.'' It is undisputed that this letter was written within less than 60 days after Mabe's departure. The receipt of this letter by the insurance company is not denied, but its reply thereto is not in the record, but subsequent correspondence between the insurance company and the bank, and its attorney, makes clear the fact that the insurance company at all times denied liability under the policy. The letter above referred to apparently justified that position, as the policy did not insure against an unlawful disposition of the car by Mabe.

It appears that when Mabe left Fulton county in the car, about one month after the insurance policy had been written, he carried a suitcase with him, and that he had a collision with another car near Waynesville, Missouri, in which his own car was severely damaged. He was arrested by the state police of Missouri for driving in an intoxicated condition, and was placed in jail, where after being confined for a few days he was released from custody. It is not shown what disposition was made of the charge upon which Mabe was arrested. The police had the car towed to Waynesville where it was placed on a vacant lot used by the Bell Garage Company in connection with its business, but the owner of this lot assumed no responsibility for the car.

Cypret was advised by Mabe's father of the wreck of the car, and he went to Waynesville to recover it, but was unable to locate it; Cypret learned at Mabe's trial

in Fulton county where Mabe had left the car, and he again went to Waynesville, where he procured an affidavit from one Swanson, an employee of the Bell Garage Company, dated September 2, 1941.

Mabe made default in the payments due on his note, and Cypret was advised of that fact, whereupon, in accordance with the arrangement under which the bank handled the motor company's paper, Cypret paid the note and took an assignment thereof and of the mortgage and policy, and this suit was filed in the name of Mabe and the motor company against the insurance company to collect the insurance. Mabe was made a party plaintiff, but by what authority is not shown, as he did not appear at the trial.

The cause was tried by consent before the court, sitting as a jury, and an opinion was prepared by the court containing findings of fact, upon which a judgment was rendered against the insurance company for the amount of the note, which, according to the testimony, was less than the value of the car, and from that judgment is this appeal.

Several errors are assigned in the motion for a new trial for the reversal of this judgment. The first and most important question in the case is the one of fact, whether the car was stolen by someone other than Mabe. It is conceded there can be no recovery on the policy unless the showing was made that some person, other than Mabe, had stolen the car. If the showing was made, it is unimportant that the testimony does not show who the thief was. This proposition is sustained by the opinion in the case of *National Surety Co.* v. *Fox,* 174 Ark. 827, 296 S. W. 718, 54 A. L. R. 458.

The court found, and we think the testimony is sufficient to support the finding, that when Mabe was released from jail in Waynesville, he left that community and was never seen in that neighborhood again, and when first heard from thereafter he was in Arizona, and there was no testimony that he went there or left Waynesville in his car.

Error is assigned in the refusal to exclude the affidavit of one Swanson, an employee of the Bell Garage Company, as to the disappearance of the car from the storage lot. A copy of this affidavit was sent to the insurance company, and it was competent testimony on the issue whether proof of loss had been made. It was not competent to show how the car disappeared, as it was merely an *ex parte* affidavit. However, one Hendry, another employee of the Bell Garage Company, did testify that after the car had been in storage on the lot for about four weeks it disappeared one night. The court below found, from this testimony, that someone other than Mabe had stolen the car, and we are unwilling to say this inference might not have been deduced from the fact that Mabe had not been in that vicinity for several weeks before the disappearance of the car.

It is urged that the judgment should be reversed for the reason that proof of the theft of the car was not made within 60 days after the occurrence of that event. It will be remembered, however, that within less than that time the bank notified the company that both Mabe and the car had disappeared, and again on August 13, 1941, the bank wrote the insurance company that Mabe had been located in Arizona, but that the car had not been found. To this letter the insurance company replied, denying liability under the policy, on the ground that a man could not steal his own car. Later the cashier of the bank wrote the insurance company a letter bearing date of September 27, 1941, advising that another, and not Mabe, had stolen the car. To this letter the manager of the claims department of the insurance company replied: ''I have been trying my best to advise you that you had no claim under our policy in this matter. To make it definite please be advised that we are denying any and all liability on this claim.''

Now, the affidavit of Swanson was not competent evidence at the trial that someone other than Mabe had stolen the car, but it was competent to show that the insured was advising the insurer of the theft. The objection to its admission was, therefore, properly over-

ruled. *St. Louis, I. M. & S. Ry. Co.* v. *Hendricks,* 48 Ark. 177; 2 S. W. 783, 3 Am. St. Rep. 222; *Bodcaw Lumber Co.* v. *Ford,* 82 Ark. 555, 102 S. W. 896. When the insurance company definitely denied liability, the necessity for further proof was dispensed with, so far as meeting the requirement of the policy that proof of loss be furnished within 60 days.

This affidavit of Swanson was prepared as soon as the information contained in it was obtained, and was furnished the insurer within less than 60 days after Cypret was advised as to the circumstances under which the car had disappeared. The insurance company might have required more definite information, but instead of doing so it denied any liability under the policy, and that action dispensed with the necessity of further proof. *Mechanics' Ins. Co.* v. *Inter-So. Life Ins. Co.,* 184 Ark. 625, 43 S. W. 2d 81. See, also, *Arlotte* v. *National Liability Ins. Co.,* 312 Pa. St. 442, 167 Atl. 295, 108 A. L. R. 901, and the many cases there cited, including a number by this court.

The competent testimony of Hendry that the car was removed from the storage lot during the night lends support to the finding of the court that Mabe did not remove it. No one questioned his right to the possession of the car, and it was not necessary for him to recover his possession surreptitiously and at night. The car had not been abandoned, it was on a lot used for storage purposes and it was constructively, at least, in Mabe's possession, or in the possession of the Bell Garage Company for him. The garage company claimed no interest in the car, although it might have made some charge for storage.

It is insisted that the motor company has no right to collect insurance on the policy for the reason that it is a single interest policy, insuring only the bank. Two answers may be made to this contention. The first is, the policy covered "The interest of Bank of Thayer, or assignees thereof," and the motor company is the assignee of the bank. The second answer is, that the assignments of the note for purchase money, the mortgage se-

curing it, and the policy itself, were not made until after the loss had occurred. Cypret had indorsed the note of Mabe to the bank, and he was therefore liable as an indorser, and that indorsement was made good when he paid the note to the bank, thereby being subrogated to the rights of the payee. *Briscol* v. *American So. Trust Co.,* 176 Ark. 401, 4 S. W. 2d 912.

But, be that as it may, in the case of *Planters' Nat. Bank* v. *Lawrence County Bank,* 176 Ark. 228, 2 S. W. 2d 704, it is said: "This court has held that the right of action on an insurance policy is assignable under our statute, and that a clause in the policy against assignment without consent of the company applies only to assignments during the lifetime of the policy, and not to an assignment of liability which has already accrued under the policy. *McBride* v. *Aetna Life Ins. Co.,* 126 Ark. 528, 191 S. W. 5, and *Garetson-Greason Lbr. Co.* v. *Home Life & Accident Co.,* 131 Ark. 525, 199 S. W. 547. To the same effect see *Mosaic Templars of America* v. *Hearon,* 153 Ark. 568, 241 S. W. 35, 27 A. L. R. 1147, where it was held that, unless a contract of insurance contains a restriction concerning assignments, an insurance policy may ordinarily be assigned in any form recognized by law, even by oral assignment."

It is finally insisted that there can be no recovery on the policy because the fact is undisputed that the notice to the insurance company that the car had been stolen was not given until more than 60 days after that event occurred. But it is also undisputed that notice was given within less than 60 days after that information was obtained. A statement supporting this contention appears at § 1507, Couch's Cyclopedia of Insurance Law, Vol. 7, p. 5386. But a different view is expressed in § 1111, Vol. 29, Am. Jur., p. 834, where it was said: "Want of Knowledge of Event Upon Which Policy Is Payable.— It is generally held that provisions requiring the insured to give notice or furnish proofs of loss do not apply until the insured has knowledge of the loss. Thus, notice under a liability policy need not be given until after the insured has knowledge that an accident has occurred.

Likewise, the requirement of an indemnity policy that immediate notice be given of any default is satisfied where notice is given as soon as knowledge is obtained, and the employer need not act on mere suspicion.'' Many cases on the subject are cited in the annotator's note to the case of *Clements* v. *Preferred Accident Ins. Co.,* 76 A. L. R. 81, which note is continued in 123 A. L. R. 966.

We think this latter view is more consonant with reason and justice and the purpose of procuring the insurance. Notice was promptly given that the car had disappeared, but notice that it had been stolen could not be given until that information had been obtained. Notice of the mere suspicion or belief of the insured that the car had been stolen would have served no purpose, and would have been ignored, but the insurer was advised when the facts became known and within less than 60 days of that time.

The trial judge found that the car had been stolen by someone other than Mabe, and we are unwilling to say that the testimony is not legally sufficient to support that finding, and the judgment must, therefore, be affirmed, and it is so ordered.