FIRST SECURITY BANK & TRUST, APPELLANT, V. NEW HAMPSHIRE
INSURANCE COMPANY, APPELLEE.

441 N.W.2d 188

Filed June 9, 1989.   No. 89-176.

James B. Cavanagh, of Erickson & Sederstrom, P.C., for appellant.

John R. Baylor, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The plaintiff, First Security Bank & Trust, commenced this action to recover losses it alleged it sustained as the result of

dishonest and fraudulent acts of James Gillette, an employee and officer of the bank at the time the acts took place. The plaintiff's second amended petition alleged that the losses were covered under the terms of a bankers blanket bond and an excess bank employee dishonesty blanket bond issued to the plaintiff by the defendant, New Hampshire Insurance Company.

The defendant filed a motion to make the second amended petition more definite and certain and to strike redundant or irrelevant matter from the petition. The motion also contained language that, "in the alternative," the defendant demurred to paragraph 10 of the petition, all of the allegations in respect to the excess bank employee dishonesty blanket bond, and all "conclusionary statements" in regard to a cause of action for violation of lending limits contained in the petition.

The plaintiff failed to attach copies of the bonds involved to the petition, but sufficient language of the bonds is alleged in the petition and a subsequent stipulation between the parties so that the issues raised by the demurrer can be determined.

Each bond contained a provision that the bond insured against "loss sustained by the Insured at any time *but discovered during the Bond Period.*" (Emphasis supplied.) Each bond also contained a provision that "[a]t the earliest practicable moment *after discovery of any loss* hereunder the Insured shall give the Underwriter written notice thereof and shall also *within six months after such discovery* furnish to the Underwriter affirmative proof of loss with full particulars." (Emphasis supplied.)

The stipulation alleged that each bond was canceled and terminated at noon on April 20, 1983.

The petition did not allege a specific date on which the plaintiff *discovered* the alleged losses, but did allege the following:

8. In January and February, 1983 the plaintiff was first advised by state and federal regulators and law enforcement agencies that James Gillette may have been involved in activities which were apparent violations of the federal statutes although the factual basis for the claimed violations was not revealed. On February 1, 1983 the

plaintiff gave notice to the defendant of the advisement from the regulators, and gave further notice on April 13, 1983.

9. Plaintiff submitted a formal proof of loss to the defendant on March 29, 1984 which was the soonest that the plaintiff had sufficient factual information which it could submit with regard to the defalcations of James Gillette. Prior to that time, the plaintiff did not have sufficient factual information for the following reasons:

a) The methods employed by Gillette to remove funds from the plaintiff or loan monies to Newt Copple were done in such a manner as to conceal the true nature of the transaction;

b) Documents were removed from the plaintiff's custody or destroyed by Gillette making it difficult, if not impossible, to reconstruct the transactions;

c) Much of the knowledge of the true nature of the transactions was known only to Gillette, Newt Copple, and federal and state regulators or law enforcement agencies, which were conducting criminal investigations and a Grand Jury investigation;

d) The confidentiality of criminal investigations and Grand Jury proceedings made it impossible for the plaintiff to obtain information as to the true nature of the activities of Gillette;

e) It was not until information regarding the criminal investigations became public that the plaintiff was able to formulate factual information as to Gillette's activities.

10. The delay, if any, of the plaintiff filing a proof of loss within any time constraints established by the Bonds is excused, waived and any purported time constraints are of no effect for the following reasons:

a) The plaintiff's inability, through no fault of its own, to file a formal proof of loss setting forth the particulars of any defalcation or fraud;

b) Much of the factual basis for the claims could not reasonably have been known by the plaintiff to file a proof of loss because of the secrecy and confidentiality of the criminal investigations;

c) Any time restriction within which to file a formal proof of loss with particulars is against public policy and contrary to Nebraska Statute, §44-357;

d) Any delay in filing a formal proof of loss has not in any manner prejudiced the rights of the defendant or its ability to investigate or defend;

e) The plaintiff has at all times acted in good faith;

f) The time period for filing a formal proof of loss should be tolled.

The trial court treated the defendant's motion as a general demurrer and found that coverage was limited to losses discovered within the bond period, that the provisions of the bonds regarding proof of loss were mandatory, that the plaintiff's allegations that it was excused from compliance with the provisions of the bonds were not effective, that Neb. Rev. Stat. §§ 44-357 and 44-358 (Reissue 1988) were not applicable, that the provisions of the bonds were not void as against public policy, and that the second amended petition failed to state a cause of action. The plaintiff elected to stand upon its petition, and the petition was dismissed. The plaintiff has appealed.

Since the appeal is from the orders of the trial court sustaining the defendant's demurrer and dismissing the petition, this court must accept the " 'truth of facts well pled and the factual and legal inferences which may be reasonably deduced from such facts, but does not accept conclusions of the pleader.' " *Security Inv. Co. v. State*, 231 Neb. 536, 538, 437 N.W.2d 439, 442 (1989), citing *Weiner v. Hazer*, 230 Neb. 53, 430 N.W.2d 269 (1988). Additionally,

"When ruling on a demurrer, a court must assume that the pleaded facts, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of a fact not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial."

*Security Inv. Co.* at 538, 437 N.W.2d at 442, citing *Schuyler State Bank v. Cech*, 228 Neb. 588, 423 N.W.2d 464 (1988).

In order to state a cause of action on the bonds, it was incumbent upon the plaintiff to allege facts showing that (1) the

losses had been *discovered* within the bond period; (2) written notice of the losses had been given to the underwriter at the earliest practicable moment after *discovery* of the losses; and (3) proof of loss with full particulars had been furnished to the underwriter within 6 months after *discovery* of the losses.

The term "discovery," as used in fidelity insurance policies and particularly in bankers blanket bonds, has been defined in a large number of cases.

In *Pacific-Southern Mortg. Trust Co. v. Ins. Co. of N.A.*, 166 Cal. App. 3d 703, 709-11, 212 Cal. Rptr. 754, 757-58 (1985), the court stated:

> When "discovery of the loss" occurs has been the subject of a great deal of litigation (see Woods, William H., "Conditions to Recovery: Notice, Proof of Loss and Timeliness of Filing Suit" in Bankers and Other Financial Institution Blanket Bonds (A.B.A. 1979) p. 395). "Discovery" has been variously defined as occurring when "facts giving rise to a later claim are discovered by the insured, when a claim is made against the insured that may result in a judgment, or when a claim or judgment is settled" (*USLIFE Savings & Loan Assn. v. National Surety Corp.*, 115 Cal.App.3d 336, 346, 171 Cal.Rptr. 393; *Continental Ins. Co. v. Morgan, Olmstead, Kennedy & Gardner, Inc.*, 83 Cal.App.3d 593, 607, 148 Cal.Rptr. 57), or as "knowledge which would justify a careful and prudent [person] in charging another with fraud or dishonesty" (*Hidden Splendor Mining Co. v. General Ins. Co. of America* (10th Cir. 1966) 370 F.2d 515, 517, and cases cited therein).
>
> To constitute "discovery" of the loss, the insured must have more than a mere suspicion that a covered loss has occurred (*Pacific Coast A. Bureau v. Insurance Co.*, 115 Cal.App. 583, 586, 2.P.2d 218; *L.A. Athletic Club v. U.S. Fidelity etc. Co.*, 41 Cal.App. 439, 447, 183 P. 174). There must be discovery of both the loss and the dishonesty (*Fidelity S. & L. Ass'n v. Aetna Life & Cas. Co.* (9th Cir.1981) 647 F.2d 933, 938). However, "discovery" does not depend on the insured's knowledge or discovery of the full scope and exact details of the affair (*City Loan & Sav.*

*Co. v. Employers Liability Assur. Corp. Ltd.* (N.D.Ohio 1964) 249 F.Supp. 633, 658, aff'd without opinion, 356 F.2d 941 (6th Cir.), and cases cited therein), nor encompass a later understanding of previously known facts or a later recognition of coverage within the terms of the fidelity bond (*USLIFE Savings & Loan Assn. v. National Surety Corp., supra,* 115 Cal.App.3d 336, 346, 171 Cal.Rptr. 393).

. . . .

We think the term "discovery of the loss" is not ambiguous. By its plain meaning, it means that time when the insured discovers it has suffered a *loss,* not that time when it discovers it has a *potential loss.*

(Emphasis in original.)

In *Utica Mut. Ins. v. Fireman's Fund Ins. Companies,* 748 F.2d 118, 121-23 (2d Cir. 1984), the court stated:

Compliance with the notice requirements set forth in an insurance contract is a condition precedent to recovery under New York law, and failure by the insured to comply with such requirements relieves the insurer of liability. *See Gardner-Denver Co. v. Dic-Underhill Constr. Co.,* 416 F.Supp. 934, 936 (S.D.N.Y.1976) (citing *Security Mut. Ins. Co. v. Acker-Fitzsimons Corp.,* 31 N.Y.2d 436, 440, 340 N.Y.S.2d 902, 905, 293 N.E.2d 76, 79 (1972)).

An insurance company is entitled to require notice at the earliest time practicable after a loss has occurred. Prompt notice permits the insurer to investigate the facts on which the claim is predicated and to adjust its books in order to maintain a proper reserve fund in light of the insured's claim. New York law permits an insurance company to assert the defense of non-compliance without showing that the lack of timely notice prejudiced the insurer in any way. *Id.*

The fidelity bond involved in this case required Utica to notify Fireman's Fund of any loss "as soon as practicable," which simply means that notice had to be given within a reasonable time of the discovery of loss. *See Mighty Midgets, Inc. v. Centennial Ins. Co.,* 47 N.Y.2d 12, 19, 416 N.Y.S.2d 559, 563, 389 N.E.2d 1080, 1084

(1979). Whether Utica complied with the notice provisions, therefore, depends on when Utica *discovered* that there had been misconduct resulting in a loss.

. . . .

Courts have consistently held that a loss is discovered once an insured has obtained facts that would cause a reasonable person to recognize that there had been dishonesty or fraud resulting in loss. *See, e.g., American Sur. Co. v. Pauly,* 170 U.S. 133, 147, 18 S.Ct. 552, 557, 42 L.Ed. 977 (1898); *Fidelity & Deposit Co. v. Hudson United Bank,* 653 F.2d 766, 774 (3d Cir. 1981); *Perkins v. Clinton State Bank,* 593 F.2d 327, 334-35 (8th Cir.1979); *Hidden Splendor Mining Co. v. General Ins. Co.,* 370 F.2d 515, 517 (10th Cir.1966). New York law, which governs in this case, also requires that the time of discovery be determined according to an objective test, based on the conclusions that a reasonable person would draw from the facts known to the insured. *See Security Mut. Ins.,* 31 N.Y.2d at 441-43, 340 N.Y.S.2d at 906-07, 293 N.E.2d at 78-90.

. . . .

Although Utica is correct that mere suspicions do not trigger the notice requirement, an insured cannot disregard the known facts. "[W]hen the insured learns the facts constituting the alleged dishonesty his prior suspicions, if any, are converted to knowledge which he cannot ignore and which constitutes 'discovery.' " *Perkins,* 593 F.2d at 335 (quoting *Alfalfa Elec. Coop. Inc. v. Travelers Indem. Co.,* 376 F.Supp. 901, 906 (W.D.Okla.1973)).

. . . .

Adopting Utica's arguments concerning when a loss is discovered would broaden the definition of discovery and would effectively eliminate the insured's duty to inquire into the facts. It would permit the insured to avoid making a reasonable assessment of the information presented, and would undermine the ability of the insurer to make a timely investigation and adjust its reserve funds.

(Emphasis in original.)

500

In *United States Fidelity & Guar. Co. v. Empire State Bank*, 448 F.2d 360, 364-66 (8th Cir. 1971), the court said:

On the discovery issue, both parties cite Jefferson Bank & Trust Co. v. Central Surety & Insurance Corp., 408 S.W.2d 825 (Mo.1966), as enunciating the controlling principles of law. In *Jefferson*, the Missouri Supreme Court adopted the following language taken from Wachovia Bank & Trust Co. v. Manufacturers Casualty Insurance Co., 171 F.Supp. 369 (M.D.N.C.1959): " 'In order to constitute a "discovery" in accordance with the terms of the policy * * * there must be facts known, at the time it is asserted that the discovery was made, which would lead a reasonable person to an assumption that a shortage existed. The facts must be viewed as they would have been by a reasonable person at the time discovery is asserted, and not as they later appeared in the light of subsequently acquired knowledge. * * * [T]he mere discovery of certain facts which later lead to other facts which reveal the existence of a shortage does not necessarily constitute a discovery. *Knowledge available to the insured must rise above a mere suspicion of loss.* The fact that an investigation after the termination of the policy leads to the disclosure of an actual defalcation does not raise a previous suspicion to the leval [sic] of a discovery. Inefficient business procedures, or irregularities and discrepancies in accounts, if as consistent with the integrity of employees as [with] their dishonesty, does not constitute a discovery, even though dishonest acts may later be found to exist.' (emphasis and bracketed word added) [408 S.W.2d at 831, quoting 171 F. Supp. at 375-376]" Discovery thus imports an awareness of the *significance* of known facts. The Missouri Supreme Court particularly noted in *Jefferson* that "* * * not only must the facts be known, but they also must be recognized for what they are * * *." 408 S.W.2d at 831.

. . . .

Suspicion alone does not satisfy the test of discovery. Jefferson Bank & Trust Co., *supra.*

In *Perkins v. Clinton State Bank*, 593 F.2d 327, 333-35 (8th

Cir. 1979), the court said:

> The meaning of "discovery" in timely notice provisions has been judicially construed in several cases dealing with losses due to dishonest employees. *See, e. g., American Surety Co. v. Pauly*, 170 U.S. 133, 144-47, 18 S.Ct. 552, 42 L.Ed. 977 (1898); *United States Fidelity & Guaranty Co. v. Empire State Bank*, 448 F.2d 360, 364-65 (8th Cir. 1971); *Federal Deposit Insurance Corp. v. Aetna Casualty & Surety Co.*, 426 F.2d 729, 738-39 (5th Cir. 1970); *Hidden Splendor Mining Co. v. General Insurance Co.*, 370 F.2d 515, 519 (10th Cir. 1966); *American Employers' Insurance Co. v. Cable*, 108 F.2d 225, 226-27 (5th Cir. 1939); *Midland Bank & Trust Co. v. Fidelity & Deposit Co.*, 442 F.Supp. 960, 971-73 (D.N.J. 1977); *Alfalfa Electric Cooperative, Inc. v. Travelers Indemnity Co.*, 376 F.Supp. 901, 906 (W.D.Okl.1973); *National Mutual Casualty Co. v. Cypret*, 207 Ark. 11, 179 S.W.2d 161, 164 (1944); *Fidelity & Deposit Co. v. Cunningham*, 181 Ark. 954, 28 S.W.2d 715, 719 (1930). Arkansas law accords with the generally accepted definition of discovery as construed in connection with blanket employee fidelity bonds, and has been stated by the Arkansas Supreme Court as follows: "Under the terms of a bond indemnifying the assured against the larceny or embezzlement of the principal and requiring notice by the assured to the insurer on their becoming aware of same, to render the notice necessary, more than mere suspicion is required; circumstances must have existed and been known by the assured, which would have induced the belief in an ordinarily prudent person that a larceny or embezzlement had been committed." *Fidelity & Deposit Co. v. Cunningham*, 181 Ark. 954, 28 S.W.2d at 719.

> From the foregoing authorities, "discovery" of fraud or dishonesty is deemed to occur when the insured actually becomes aware of sufficient facts which would lead a reasonable person to believe that an insured loss has occurred. Mere suspicion of an insured loss by the insured is not sufficient to trigger the notice requirement. *See Federal Deposit Insurance Corp. v. Lott*, 460 F.2d 82,

86-87 (5th Cir. 1972). . . . The well established rule is that the insured under a blanket employee's fidelity bond is not bound to give notice until he has acquired knowledge of some specific fraudulent or dishonest act. As early stated: "[N]either negligence nor inattention, nor any failure to discover what by diligence might have been discovered, nothing, in fact, short of actual discovery by the bank of dishonesty or a positive breach of an imperative condition, will defeat claims for loss caused by that dishonesty, unless it is otherwise provided in the contract." *American Employers' Insurance Co. v. Cable*, 108 F.2d at 227.

As Judge Bright observed in *United States Fidelity & Guaranty Co. v. Empire State Bank, supra*, it is not only knowledge of the facts but the facts must be such that a reasonable insured would understand the significance of them connoting the commission of a fraud. 448 F.2d at 365.

. . . .

. . . A facile understanding of the definition of "discovery" under a fidelity bond has been stated to be: "An oversimplification of the definition is that when the insured learns the facts constituting the alleged dishonesty his prior suspicions, if any, are converted to knowledge which he cannot ignore and which constitutes 'discovery.' " *Alfalfa Electric Cooperative, Inc. v. Travelers Indemnity Co.*, 376 F.Supp. at 906.

Thus, the test of discovery under the present bonding agreement, which insured the Bank against the negligent release of escrow documents based on false misrepresentations, must relate to a reasonable person's subsequent awareness of facts which would convert his negligent appreciation of the facts into actual knowledge of the alleged dishonesty.

In *Nat'l Newark & Essex Bank v. American Insurance Co.*, 76 N.J. 64, 80-81, 385 A.2d 1216, 1224 (1978), the court said:

Of course, there is a vast difference between a fire insurance policy and a fidelity bond. While discovery of the insured loss under the former is self-evident and not

difficult to date, serious difficulties inhere in pinpointing the exact time of discovery of a loss under the latter. "Discovery" of a loss under a fidelity bond occurs when the insured learns facts or obtains knowledge which would justify a careful and prudent person in charging another with dishonesty or fraud. *American Surety Co. v. Pauly*, 170 *U. S.* 133, 18 *S. Ct.* 552, 42 *L. Ed.* 977 (1898); *Federal Deposit Ins. Corp. v. Aetna Casualty & Surety Co.*, 426 *F.* 2d 729, 739 (5 Cir. 1970); *Alfalfa Electric Coop., Inc. v. Travelers Indemnity Co.*, 376 *F. Supp.* 901, 906 (W. D. Okl. 1973); *Prior Lake State Bank v. National Surety Corp.*, 248 *Minn.* 383, 80 *N. W.* 2d 612, 616 (1957). Mere suspicions of irregularities or improper conduct do not require the insured to report such acts. *American Surety Co. v. Pauly, supra*; *Prior Lake State Bank v. National Surety Corp., supra*; *Federal Deposit Insurance Corp. v. Lott*, 460 *F.* 2d 82, 86-87 (5 Cir. 1972).

It is apparent from the allegations of the petition that the plaintiff had not "discovered" a loss when it received advice that James Gillette may have violated certain federal statutes. The allegations in paragraph 9 of the petition suggest that discovery did not take place until about March 29, 1984, when the proof of loss was filed, nearly a year after the bonds had been canceled and terminated.

It is only actual, discovered losses which, when they have been reported to the insurer, are sufficient to constitute notice of loss. Mere suspicions are not discovered losses. Mere suspicions, when reported to the insurer, do not alert the insurer that an actual loss has occurred. Suspicions do not disclose specific, articulable facts which demonstrate discovery of a loss has occurred. A report of anything short of an actual discovered loss is insufficient to alert the insurer that a loss has been discovered. In this case, when the plaintiff notified the defendant that Gillette may have violated certain federal statutes, it did not put the defendant on notice that an actual loss had been discovered. The notice served only to report mere suspicions of a possible loss. The petition fails to allege any subsequent notice to the defendant upon discovery of an actual loss.

A proof of loss filed nearly a year after the bonds had been canceled and terminated could not satisfy the requirement that the proof of loss be filed within 6 months after discovery of a loss that had to be discovered during the bond period.

In *Dunbar v. National Surety Corporation*, 140 Neb. 833, 834, 2 N.W.2d 116, 117 (1942), the plaintiff sued on a fidelity bond which covered losses " 'discovered during the term of this bond or within fifteen months after the date of any termination of the surety's liability.' " The plaintiff attempted to excuse his failure to discover the loss within the time specified in the policy by alleging that he " 'did not and could not discover said fraud until July, 1939, after a complete audit of his books and accounts.' " *Id.* at 835, 2 N.W.2d at 117.

This court held that the policy provision was controlling and that the defendant's demurrer to the petition should have been sustained.

In referring to the policy provision concerning discovery of the loss, this court said:

This provision relates alone to the time for discovering losses suffered by employer through wrongful acts of the employee and is a proper subject of contract. It requires of the employer vigilance and performance of obligations at the source of knowledge and at the place for acquiring necessary information. The employer had supervisory authority to direct his bookkeeper and cashier in the duties of her employment. He had the means of discovering peculations and the obligation to do so was imposed on him. The books of account that recorded his business transactions were open to him. In the fidelity bond the time limit for the discovery of losses occasioned by the dishonesty of the employee was a reasonable and valid provision affecting the extent of liability of the surety, the amount of premiums required for fidelity or insurance risks and lessening the expenses of investigating losses. The law applicable to this provision of the bond has been stated as follows:

"It is well settled that where the liability of the insurer is expressly limited in an indemnity or fidelity contract to losses discovered within a specified time, there is no

liability unless the fraud, dishonesty or negligence causing the loss not only occurs but is discovered within the time limit, and the mere fact that the discovery of a fraud during that period is prevented by the concealment thereof by the defaulter will not extend the period of indemnity. The insured is bound to discover the loss during the prescribed period, and if he fails to do so the insurance company is not liable." 14 R. C. L. 1267, sec. 443.

On the face of the petition in which the bond is included, the following facts are clearly shown: The bond or policy terminated February 9, 1936. The 15-month period thereafter for discovery of the losses expired in May, 1937. The losses were not discovered by plaintiff until July, 1939. In view of these facts the petition was demurrable because it shows on its face that plaintiff did not discover his losses within the 15-month period limited by the contract—a condition precedent to recovery.

*Dunbar, supra* at 836-37, 2 N.W.2d at 117-18.

In this case, the plaintiff failed to allege discovery of the loss within the period of the bonds, a fact essential to recovery on the bonds.

In *American Surety Co. v. Bankers' Savings & Loan Ass'n*, 59 F.2d 577 (8th Cir. 1932), a suit on a fidelity bond in which the plaintiff had failed to give prompt notice of discovery of a loss, the court said at 580:

Plaintiff complains that the bond contained no forfeiture clause. Such clause was not necessary. We are dealing with an agreement in writing. By the terms thereof, under certain conditions, a recovery might be had against defendant. In this case, the conditions were not met or performed. Therefore no recovery may be had.

A further contention of plaintiff is that the provisions of section 44-322, Compiled Statutes of Nebraska 1929, prevent defendant from taking advantage of the fact that notice was not given as required by the terms of the policy. The statute does not apply. In the nature of things, the failure to give notice could not have existed at the time of the loss, or have contributed thereto.

In *Ach v. Farmers Mut. Ins. Co.*, 191 Neb. 407, 215 N.W.2d

518 (1974), we held that Neb. Rev. Stat. § 44-358 (Reissue 1988) had no application to a policy provision requiring prompt notice of the occurrence of a loss. In that case we said:

It is clear that the provisions of section 44-358, R. R. S. 1943, have no application to policy provisions requiring the giving of notice of loss. The provision of the statute on which the plaintiffs rely is: "The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability, *unless such breach shall exist at the time of the loss* and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding." (Emphasis supplied.) This provision was considered by this court in Clark v. State Farmers Ins. Co., 142 Neb. 483, 7 N. W. 2d 71. We there said: "The second sentence means that a breach of a warranty or condition which exists at the time of a loss and contributes to the loss may avoid the policy or enable the insurer to avoid liability. The sentence relates to those breaches which exist 'at the time of the loss.' It does not relate to a breach of the terms of a policy which could only arise after the loss has occurred. It does not deny the insurer the right to rely upon the conditions of its policy which the insure[d] is required to perform as a condition of recovery after the loss has occurred. It relates to the question of a recoverable loss and not to the question of procedure to be followed in collecting for the loss after it has occurred. Clearly a notice of loss and proofs of loss can only be given after the loss has occurred."

*Ach, supra* at 408-09, 215 N.W.2d at 519-20.

There is no merit to the plaintiff's contention that the policy provision requiring proof of loss within 6 months after discovery of the loss is contrary to the public policy of this state.

The judgment of the district court is affirmed.

AFFIRMED.