**SOUTHEAST BAKERY FEEDS, INC., Carolina Bakery Feeds Inc., and Bakery Feeds Corp., Plaintiffs/Respondents,**

v.

**RANGER INSURANCE COMPANY, Defendant/Appellant.**

No. 73363.

Missouri Court of Appeals, Eastern District, Division Two.

Aug. 11, 1998.

determination.

636

Ronald C. Willenbrock, Amelung, Wulff & Willenbrock, P.C., Julie S. Paez, St. Louis, for defendant/appellant.

Steven H. Schwartz, Brown & James, P.C., John P. Rahoy, St. Louis, for plaintiffs/respondents.

CRANE, Presiding Judge.

Plaintiffs, insured corporations, were refused coverage under the Employee Dishonesty Coverage Form of two commercial crime policies because they did not discover an employee's theft until more than one year after the policies expired. The trial court entered summary judgment in plaintiffs' favor on their breach of contract claim against insurer on the grounds that the policies were "occurrence" policies and insurer was not prejudiced by the late discovery. We reverse and remand on the grounds that these policies were not "occurrence" liability policies, but were indemnity policies which validly limited insurer's liability to losses discovered within one year after the policies expired. Accordingly, the policies did not cover a claim which plaintiffs discovered more than one year after the policies expired.

The material facts are undisputed. Plaintiffs, Southeast Bakery Feeds, Inc., f/k/a Southeast By–Products, Inc., Carolina Bakery Feeds, Inc., and Bakery Feeds Corp. are foreign corporations with an office in the City of St. Louis, Missouri. On September 20, 1989 defendant, Ranger Insurance Company [Ranger], issued policy No. GPP 30 19 22 to plaintiffs, which expired on September 20, 1990. On September 20, 1990 Ranger issued policy No. GPP 30 32 14, which expired on September 20, 1991. Both policies were Commercial General Liability policies. Commercial Crime Coverage, which included an Employee Dishonesty Coverage Form, was added to the first policy on June 12, 1990 and was included in the second policy which expired on September 20, 1991. Plaintiffs eliminated this coverage in subsequent policies.

The Crime General Provisions Form of the Commercial Crime Coverage Part contained the following conditions applicable to all crime coverage forms contained within the policies:

**B.   GENERAL CONDITIONS**

.  .  .  .  .

3.  **Discovery Period for Loss:** We will pay only for covered loss discovered no later than one year from the end of the policy period.

4.  **Duties in the Event of Loss**

After you discover a loss or a situation that may result in loss of, or loss from damage to, Covered Property you must:

a.  Notify us as soon as possible.

b.  Submit to examination under oath....

c.  Give us a detailed, sworn proof of loss within 120 days.

d.  Cooperate with us in the investigation and settlement of any claim.

. . . .

6.  **Legal Action Against Us:** You may not bring any legal action against us involving loss:

a.  Unless you have complied with all the terms of this insurance; and

. . . .

c.  Unless brought within 2 years from the date you discover the loss.

. . . . .

13.  **Policy Period**

. . . .

b.  Subject to The Loss Sustained During Prior Insurance condition,

we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

Between June 12, 1990 and September 20, 1991, while the Commercial Crime Coverage was in effect, John Pankey, plaintiffs' controller, obtained approximately $163,325.00 from plaintiffs by preparing and cashing multiple forged checks. On April 29, 1994 plaintiffs filed a Property Loss Notice with Ranger notifying it of the loss. Ranger subsequently refused to pay plaintiffs' claim on the ground that plaintiffs failed to comply with the discovery and notice provisions contained in their last Ranger policy with Employee Dishonesty Coverage.

Plaintiffs filed a breach of contract action against Ranger to recover the amount they lost as a result of an employee's dishonesty.[1] The parties filed cross-motions for summary judgment on the contract claim. The trial court granted summary judgment in plaintiffs' favor in the amount of $163,325.11. In its Memorandum, Order and Judgment, the court determined that the policies were "occurrence" policies under which the insurer must show prejudice from a delay in reporting the loss in order to deny coverage. It further found that Ranger had not shown prejudice. Ranger appeals from this judgment.

For its sole point on appeal, Ranger asserts that the trial court misinterpreted the discovery clause in the policies. It argues that the discovery clause as set out in the Crime General Provisions Form only provided coverage for losses discovered within one year from the end of the policy period irrespective of whether or not it was prejudiced by plaintiffs' late discovery.

■ We review this appeal from summary judgment *de novo. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Where the underlying facts are not in question, disputes arising from the interpretation and application of insurance contracts are matters of law for the court. *Pakmark Corp.*

*v. Liberty Mut. Ins. Co.*, 943 S.W.2d 256, 258 (Mo.App.1997).

■ Under Missouri law the insured has the burden of showing by substantial evidence that its claim falls within the coverage provided by the insurance contract. *Grossman Iron & Steel Co. v. Bituminous Cas. Corp.*, 558 S.W.2d 255, 259 (Mo.App.1977). Unless an ambiguity exists, we must enforce the policy as written, giving the language of the policy its ordinary meaning. *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo. banc 1992). An ambiguity exists where the language in a policy is reasonably and fairly open to different constructions. *Id.* However, "[a] construction or interpretation of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all its provisions and is consistent with the general intent." *Dent Phelps School Dist. v. Hartford Ins.*, 870 S.W.2d 915, 920 (Mo.App.1994).

■ Ranger argues that the discovery clause is unambiguous and requires plaintiffs to discover any covered losses no later than one year from the end of the policy period, that is, no later than September 20, 1992, in order for the loss to be covered. Courts have given this meaning to this clause as it appears in commercial crime policies. *See A.B.S. Clothing Collection, Inc. v. The Home Ins. Co.*, 34 Cal.App.4th 1470, 1484, 41 Cal. Rptr.2d 166, 174 (1995); *Reliance Ins. Co. v. Treasure Coast Travel Agency*, 660 So.2d 1136, 1137 (Fla.App. 4 Dist.1995); *Boomershine Pontiac v. Globe Indem. Co.*, 219 Ga.App. 842, 466 S.E.2d 915, 918 (1996). *See also Block v. Granite State Ins. Co.*, 963 F.2d 1127, 1128 (8th Cir.1992) (applying Missouri law) (holding summary judgment in favor of the insurer appropriate on coverage issue where the insured failed to show discovery within coverage deadline).

Plaintiffs first respond that they discovered the loss within the policies' time limits because the parties stipulated that Pankey, the dishonest employee, discovered the loss when he issued the forged checks. Plaintiffs contend that the discovery clause is ambigu-

---

1. Plaintiffs also filed, but subsequently dismissed, a claim for vexatious refusal to pay.

ous because, unlike other clauses in the contract which are specifically addressed to the insured, the discovery clause fails to state "who" must discover the loss. Accordingly, they argue, the clause should be read to allow a dishonest employee's knowledge of his or her own unauthorized acts to be imputed to the company. We disagree.

In construing an insurance policy, we look at the contract as a whole and consider the language in the context of the policy. *Sanders v. Wallace*, 884 S.W.2d 300, 303 (Mo.App.1994). In General Condition 3, the discovery clause, "discovered" is used as an adjective to describe the covered loss. When "discover" is used as a verb in the same crime coverage form, in relation to loss, the subject is "you." *See* General Condition 4, "Duties in the Event of Loss" (listing the insured's duties "After *you discover* a loss or situation ..."). *See also* General Condition 6, "Legal Action Against Us" (requiring the insured to bring any legal action against Ranger within two years "from the date *you discover* the loss[ ]"). In this context losses "discovered," as used in General Condition 3, are the losses which "you" discovered. The policy states that the word "you" refers to the named insured as shown in the Declarations. The named insureds are the plaintiff corporations. An employee's undisclosed knowledge of his or her own unauthorized acts is not imputed to the employer corporation. *Southwest Bank of Polk County v. Hughes*, 883 S.W.2d 518, 524 (Mo.App.1994). Thus, the discovery clause does not cover losses discovered by the dishonest employee during the discovery period, but only covers those losses timely discovered by the named insured.

Plaintiffs next respond that the trial court correctly held that the policy is an "occurrence," as opposed to a "claims made," policy and the loss was therefore covered unless Ranger demonstrated prejudice from the late discovery. Again we disagree.

The distinction between "occurrence" and "claims made" policies is significant in the following context. In Missouri, as in other states, courts have rejected a strict contractual analysis of the notice provisions in certain liability insurance contracts. *Weaver v. State Farm Mut. Auto. Ins. Co.*, 936 S.W.2d 818, 821 (Mo. banc 1997). Thus, late notice of a claim under an "occurrence" policy does not defeat coverage unless the insurer proves it was prejudiced by the late notice. *Id.* at 819–20. An "occurrence" policy covers negligent acts or omissions occurring within the policy period, regardless of when the negligent acts or omissions are discovered or the claim is made. *Continental Cas. Co. v. Maxwell*, 799 S.W.2d 882, 886 (Mo.App.1990); *Insurance Placements, Inc. v. Utica Mut. Ins. Co.*, 917 S.W.2d 592, 597 (Mo.App.1996). On the other hand, under a "claims made" policy, coverage is effective when the negligent act or omission is discovered and reported to the insurer during the applicable period, regardless of when the act or omission occurred. *Continental*, 799 S.W.2d at 886. Under a "claims made" policy, there is no coverage for late claims whether or not the insurer was prejudiced. *Id.* at 886–87. This is because the event which invokes coverage in a "claims made" policy is transmittal of the notice of claim to the insurer. *Id.* at 886; *Insurance Placements*, 917 S.W.2d at 597.

> In exchange for limiting coverage only to claims made during the policy period, the carrier provides the insured with retroactive coverage for errors and omissions that took place prior to the policy period. Thus, an extension of the notice period in a "claims made" policy constitutes an unbargained-for expansion of coverage, *gratis*, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy. Obviously, such an expansion in the coverage provided by "claims made" policies would significantly affect both the actuarial basis upon which premiums have been calculated and, consequently, the cost of "claims made" insurance.

*Continental*, 799 S.W.2d at 887 (quoting *Zuckerman v. Nat'l Union Fire Ins. Co.*, 100 N.J. 304, 495 A.2d 395, 405 (1985)).

The distinction between "occurrence" and "claims made" liability policies is irrelevant to the issue in this appeal. In the first place, the Commercial Crime Coverage is an in-

demnity contract for losses sustained as a result of criminal acts, not a liability policy. While it covers losses sustained through acts committed or events occurring during the policy period, like an occurrence policy, it only covers those covered losses which have been discovered during a fixed period. Discovery of loss under an indemnity policy or bond is a different obligation than filing a notice of claim.

Both insurance policies and fidelity bonds are used to provide contractual indemnity for employee dishonesty and other crimes. *See* David A. Lewis, *History of Fidelity Coverage, Types of Commercial Crime Policies, in* COMMERCIAL CRIME POLICY 1–5 to 1–10 (Gilbert J. Schroeder ed., 1997); James L. Knoll and Linda M. Bolduan, *A Brief History of the Financial Institution Bond,* in FINANCIAL INSTITUTION BONDS, 5 (Duncan L. Clore ed., 1995). *See also* 35 Am.Jur.2d, Fidelity Bonds and Insurance, Sec. 1. Discovery clauses which limit the insurer's liability to losses discovered within a fixed period are common in these instruments. *See, e.g., Fed. Deposit Ins. Corp. v. Ins. Co. of N. Am.*, 105 F.3d 778, 782 (1st Cir.1997) (Financial Institution Bond, Standard Form No. 24); *Lyons v. Nat'l Sur. Co.*, 243 Mo. 607, 147 S.W. 778, 779 (1912) (bank bond); *Jefferson Bank & Trust Co. v. Central Sur. & Ins. Corp.*, 408 S.W.2d 825, 830 (Mo.1966) (Bankers Blanket Bond); *Block*, 963 F.2d at 1128 (commercial crime policy); *Boomershine*, 466 S.E.2d at 918 (commercial crime policy); *Reliance*, 660 So.2d at 1137 (commercial crime policy); *ABS Clothing*, 34 Cal.App.4th at 1484, 41 Cal.Rptr.2d at 174 (commercial crime policy). Fidelity coverage, including commercial crime coverage, has historically been provided on a loss sustained basis subject to discovery within a certain period. Paul R. Devin and Lauren D. Song, *Loss and Causation: The Alpha and Omega of Fidelity Claims Analysis,* in COMMERCIAL CRIME POLICY, *supra,* 15–16.

■ A discovery of loss clause is a safeguard to the insurer, imposing upon the insured a reasonable effort to monitor its employees' work and faithfulness. *Chicora Bank v. United States Fidelity and Guar. Co.*, 161 S.C. 33, 159 S.E. 454, 455–56 (1931);

*Ballard County Bank's Assignee v. United States Fidelity & Guar. Co.*, 150 Ky. 236, 150 S.W. 1, 2 (1912). Such clauses also allow the surety to avoid having to investigate stale claims. 13 COUCH ON INSURANCE 2d (Rev. ed.) Sec. 46:190.

"This provision relates alone to the time for discovering losses suffered by employer through wrongful acts of the employee and is a proper subject of contract. It requires of the employer vigilance and performance of obligations at the source of knowledge and at the place for acquiring necessary information. The employer had supervisory authority to direct his bookkeeper and cashier in the duties of her employment. He had the means of discovering peculations and the obligation to do so was imposed on him. The books of account that recorded his business transactions were open to him. In the fidelity bond the time limit for the discovery of losses occasioned by the dishonesty of the employee was a reasonable and valid provision affecting the extent of liability of the surety, the amount of premiums required for fidelity or insurance risks and lessening the expenses of investigating losses."

*First Sec. Bank v. New Hampshire Ins.*, 232 Neb. 493, 441 N.W.2d 188, 195 (1989) (quoting *Dunbar v. Nat'l Sur. Corp.*, 140 Neb. 833, 2 N.W.2d 116, 117 (1942)).

Discovery clauses are strictly enforced.

A fidelity bond may validly limit the liability of the insurer on such bond to losses discovered within a specified term. Such provisions are not contrary to public policy.

A provision of a fidelity bond which clearly limits the liability of the insurer to losses discovered within a certain specified period must be enforced according to its terms, so that there can be no recovery on a fidelity bond if the loss is not discovered within the time specified therein.

13 COUCH ON INSURANCE, *supra,* Sec. 46:191 (footnotes omitted). *See also* 11B APPLEMAN, INSURANCE LAW AND PRACTICE Sec. 6979 (1981).

The contract as made by the parties provides that the surety must pay the loss if

discovered within the time stated. There is no liability unless it is so discovered. It is not for the surety company to discover the dishonesty or the loss, but for the bank. This is the contract as made and under which the court must adjudicate the rights of the parties.

Neither can this plain provision of the bond be held to be an attempt to circumvent the statute of limitations. . . . If the discovery had been made within the time fixed, plaintiff would then have had the full statutory period in which to sue. It is not a question of limiting the time for bringing an action . . . but rather whether any cause of action ever existed. . . .

*Lyons,* 147 S.W. at 782. Neither the difficulty in discovering insured losses nor employee concealment excuses the insured's performance. *Id.;* 13 COUCH ON INSURANCE, *supra,* Sec. 46.194; 11B APPLEMAN, *supra,* Sec. 6979.

Certain commercial crime policies and bonds were revised in 1986 and replaced with simplified, standardized crime coverage forms. Lewis, *supra,* at 1–9. The Ranger Crime General Provisions Form and the Employee Dishonesty Coverage Form are such revised forms. The Ranger policy provides only indemnity coverage. *State Through DOTD v. Acadia Parish,* 631 So.2d 611, 614 (La.App. 3 Cir.1994). It is a general condition of the agreement that Ranger will "pay only for covered loss discovered no later than one year from the end of the policy period." The discovery clause in the Ranger policy is subject to the same interpretation that the same type of clause has been given in cases construing fidelity bonds and other indemnity insurance policies. Ranger's liability is limited to losses discovered within the specified period and there is no liability unless the losses are so discovered.

Because of the nature of the discovery clause as a valid limit of liability, the prejudice rule applicable to untimely notice in "occurrence" liability policies of insurance does not extend to the discovery clause in indemnity agreements. *Fed. Deposit Ins. Corp.,* 105 F.3d at 787. Specifically, the prejudice rule does not apply to the discovery clause in the Ranger commercial crime policy. The trial court erred in so holding.

The summary judgment entered by the trial court is reversed and the case is remanded.

RHODES RUSSELL and HOFF, JJ., concur.