AUTO CLUB FAMILY INSURANCE COMPANY, and Auto Club Inter-Insurance Exchange, Appellants,

v.

Richard K. JACOBSEN, Respondent.

No. ED 76973.

Missouri Court of Appeals, Eastern District, Division Three.

June 6, 2000.

---

Russell F. Waters, T. Michael Ward, Amy L. Klingemann, St. Louis, for appellant.

Kevin B. Behrndt, Jerry J. Murphy, St. Louis, for respondent.

CLIFFORD H. AHRENS, Judge.

The plaintiffs, Auto Club Family Insurance Co. and Auto Club Inter–Insurance Exchange (collectively, "Auto Club"), appeal from summary judgment entered in favor of the defendant, Richard K. Jacobsen ("Jacobsen"). The underlying action was one for a declaratory judgment that Auto Club had no duty to defend Jacobsen against certain causes of action brought against him by his former employer, its parent company, and its franchisor. We reverse and remand with instructions.

Jacobsen was hired by St. Louis Car Care, Inc. ("St. Louis Car Care") in 1985. St. Louis Car Care was a franchisee of Jiffy Lube International, Inc. ("Jiffy Lube"), and Jacobsen was hired to lead the development of Jiffy Lube Service Centers in the St. Louis area. Because Jacobsen would acquire confidential information in the course of his employment, he entered into a confidentiality and non-competition agreement with Jiffy Lube.

HAS Holdings, Inc. ("HAS Holdings") is the sole shareholder of Heartland Automotive Service ("Heartland Automotive"), one of the largest franchisees of Jiffy Lube in the United States. In 1995, HAS Holdings purchased substantially all of St. Louis Car Care's assets. Shortly thereafter, Jacobsen became Vice President of Operations of Heartland Automotive and signed confidentiality and non-competition agreements with HAS Holdings, Heartland Automotive and, again, Jiffy Lube.

On June 24, 1998, HAS Holdings, Heartland Automotive, and Jiffy Lube brought a six-count suit against Jacobsen (the "HAS Holdings suit") seeking injunctive relief and damages for breaches of the confidentiality and non-competition agreements (Counts I–III), breach of fiduciary duty (Count IV), violation of the Missouri Trade Secrets Act (Count V), and unfair competition (Count VI). On July 20, 1998, Jacobsen notified Auto Club of the HAS Holdings suit and demanded that Auto Club provide a defense pursuant to a homeowner's policy ("Homeowner's Policy") and a personal catastrophe and excess liability policy ("Excess Policy") issued to Jacobsen by Auto Club. Auto Club denied coverage under both policies, forcing Jacobsen to hire his own attorney.

More than two months later, Auto Club elected to provide Jacobsen's defense against the HAS Holdings suit under a reservation of rights. The attorney hired by Auto Club entered an appearance on October 2, 1998, and met with Jacobsen for the first time to discuss the suit on October 19, 1998. In the meantime, Jacobsen had incurred $52,563.00 in attorney's fees,

the reasonableness of which has never been disputed. The HAS Holdings suit settled in April, 1999, to which Auto Club contributed $15,000.00 on behalf of Jacobsen.

Auto Club filed the underlying declaratory judgment action in November, 1998.[1] Jacobsen counterclaimed, seeking the $52,-563.00 in legal fees he incurred in providing his own defense. Both parties moved for summary judgment. The trial court denied Auto Club's motion and granted Jacobsen's motion, finding that Jacobsen was entitled to a defense of the HAS Holdings suit under the plain language of the Excess Policy or, alternatively, because the relevant provisions of the Excess Policy were ambiguous in that regard and should therefore be construed against the insurer, Auto Club.[2] The trial court entered judgment in favor of Jacobsen in the amount of $52,563.00. This appeal by Auto Club follows.[3]

Summary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(3). In the case at bar, the parties do not dispute the material facts, but disagree on the proper construction of the Excess Policy. "Where the underlying facts are not in question, disputes arising from the interpretation and application of insurance contracts are matters of law for the court." *Southeast Bakery Feeds, Inc. v. Ranger Ins. Co.*, 974 S.W.2d 635, 638 (Mo.App.1998).

■ The particular issue confronting this court is the meaning of the section of

1. Auto Club also joined as defendants HAS Holdings, Heartland Automotive, and Jiffy Lube, but ultimately voluntarily dismissed those parties with prejudice.

2. The trial court made no specific findings or conclusions regarding Auto Club's duty to defend under the Homeowner's Policy, but rather found that to be a "moot issue." Though the trial court did not explain why that issue was moot, this is of no consequence because Jacobsen admits the Homeowner's Policy created no duty of Auto Club to defend him

against the HAS Holdings suit. Accordingly, the only issue on appeal is whether the Excess Policy created such a duty.

3. Contrary to Jacobsen's assertion, Auto Club's defense of Jacobsen under a reservation of rights in the HAS Holdings suit and contribution to the settlement thereof have no bearing on our determination of whether Auto Club was obligated to do so under the policies at issue.

the Excess Policy entitled "Defense of Suits Not Covered By Other Insurance" (hereafter referred to as the "Defense of Suits" section). That section provides in part (bold in original, italics added):

**DEFENSE OF SUITS NOT COVERED BY OTHER INSURANCE**

If **primary insurance** does not cover **personal injury** or **property damage** covered by *the policy*, we will:

1. defend the **insured** against a claim or suit for *damages*. We may investigate and settle any claim or suit that we decide is appropriate.

\* \* \*

Auto Club interprets this provision as follows: "If primary insurance does not cover personal injury or property damage covered by the *Excess Policy*, we will defend the insured against a claim or suit for *personal injury or property damage*." Jacobsen disputes this interpretation because, he contends, the italicized terms "the policy" and "damages" are ambiguous. Jacobsen specifically claims an average layperson could construe "the policy" to mean either the Homeowner's Policy or the Excess Policy, and would not interpret "damages" as being limited to "personal injury or property damage." Construing these ambiguities against Auto Club,[4] Jacobsen interprets this section to mean, "If primary insurance does not cover personal injury or property damage, we will defend the insured against *any* claim or suit for damages." Jacobsen's interpretation disregards the scope of coverage of the Excess Policy.

■ Although the "Defense of Suits" section is not a model of clarity, its terms

are not ambiguous as a matter of law. A contractual term is ambiguous only if it is reasonably susceptible of more than one meaning. *Jake C. Byers, Inc. v. J.B.C. Investments*, 834 S.W.2d 806, 816 (Mo.App. 1992). Stated somewhat differently, an ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the contract's terms. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo.banc 1993). To determine whether a term is ambiguous, however, we consider the instrument as a whole. *Jake C. Byers*, 834 S.W.2d at 816. In other words, we read contractual terms or provisions in the context of their surroundings.

When the term "the policy" is read in conjunction with the sentence in which it appears, it can only reasonably mean "the Excess Policy." Consider how the "Defense of Suits" section would read if "the policy" was construed to mean "the Homeowner's Policy" (primary insurance): "If [the Homeowner's Policy] does not cover personal injury or property damage covered by [the Homeowner's Policy], we will ..." This construction supposes a situation where the Homeowner's Policy would cover personal injury and property damage while simultaneously not cover the same liabilities—an impossibility. While it may have been advisable for Auto Club to use the term "this policy" rather than "the policy," we do not find the term to be reasonably susceptible of any meaning other than "the Excess Policy."[5]

■ We agree the meaning of the term "damages," when viewed in isolation, could extend to more than just "personal injury or property damage." When we consider the term in the context of the sentence in

---

**4.** Ambiguous terms are construed against the insurer. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo.banc 1993).

**5.** We find no merit in Jacobsen's argument that the phrase "the policy" is ambiguous because the Homeowner's Policy does not contain the term "personal injury." He asks, "how could the primary insurance (the homeowner's policy) cover "personal injury" under

any circumstances when it does not even contain that term in the policy?" Though the Homeowner's Policy does not contain the term "personal injury," it does contain the term "bodily injury," which is expressly subsumed in the definition of "personal injury" in the Excess Policy. Therefore, the Homeowner's Policy does insure against "personal injury," just not all forms thereof.

which it appears, however, it is apparent that its meaning is not so expansive. That sentence provides (with italics added), *"If primary insurance does not cover personal injury or property damages, we will . . . .* defend the insured against a claim or suit for damages." Under the expansive definition of "damages" urged by Jacobsen, Auto Club agrees to defend against *every* claim or suit for damages. Such a definition renders meaningless the italicized portion of the foregoing quote which specifies the circumstances in which the duty to defend arises, i.e., when personal injury or property damage is covered by the Excess Policy but not by primary insurance. "A construction which attributes a reasonable meaning to all the provisions of the agreement is preferred to one which leaves some of the provisions without function or sense." *Ringstreet Northcrest, Inc. v. Bisanz,* 890 S.W.2d 713, 718 (Mo.App.1995) If this provision extends Auto Club's duty to defend to any and all suits for damages, it would not need to specify circumstances in which that duty arises. The only way to afford a reasonable meaning to the italicized language is to construe the term "damages" as "personal injury or property damage."

■ Having determined the proper construction of the "Defense of Suits" section, we now consider whether that section obligated Auto Club to defend Jacobsen against the HAS Holdings suit. The duty to defend arises where the petition alleges facts that give rise to a claim potentially within the policy's coverage, a determination made by comparing the language of the policy with the allegations in the petition. *McCormack Baron Mgmt. Serv., Inc. v. Am. Guar. & Liab. Ins. Co.,* 989 S.W.2d 168, 170 (Mo.banc 1999). Jacobsen argues the HAS Holdings suit, at least in part, sought "property damage," defined by the Excess Policy as "injury to or destruction of tangible personal property, *including its loss of use* (emphasis added)." Jacobsen points to certain statements in Count IV (Breach of Fiduciary Duty) and Count VI (Unfair Competition) which allege that he misused "other corporate assets" and "misappropriated assets," respectively. He then argues, "Loss of use of misappropriated assets is certainly arguably damage to tangible property. These types of claims, to an average layperson, could potentially fall within the excess policy's coverage." The problem with this argument is that it assumes the HAS Holdings petition alleges the loss of use of corporate assets; it does not. The petition alleged the plaintiffs were damaged by Jacobsen's *misuse* of corporate assets, not necessarily by any loss of use thereof. The petition contained no allegations that Jacobsen's use of such assets prevented the plaintiffs from using the same.[6]

■ Even if the HAS Holdings suit is considered to be a claim or suit for "property damage," Auto Club had no duty to defend Jacobsen against such suit because it arose out of Jacobsen's "business pursuits," which are excluded from the Excess Policy's coverage under the "Exclusions" section.[7] Jacobsen argues the "business pursuits" exclusion applies to Auto Club's duty to indemnify but not to its duty to defend because the "Defense of Suits" section does not expressly exclude suits arising out of "business pursuits." Jacobsen apparently misunderstands the relationship between an insurer's duty to defend and its duty to indemnify. "The duty to defend arises whenever there is a potential or possible liability to pay . . ." *McCor-*

---

6. The assets alleged to have been misappropriated were trade secrets, sales formulae, organizational and operational methods, and other confidential business information. Because these assets could be embodied in written form, we decline to decide whether they are tangible or intangible assets.

7. The Excess Policy does not define "business pursuits." In the absence of a policy definition, contractual terms are accorded their ordinary, lay meaning. *Farmland Indus., Inc. v. Republic Ins. Co.,* 941 S.W.2d 505, 508 (Mo. banc 1997).

*mack Baron,* 989 S.W.2d at 170. Thus, the scope of the duty to defend, while broader than the scope of the coverage afforded by the policy, is nevertheless dependent thereon.[8] In the present case, liabilities from "business pursuits" are expressly excluded from Auto Club's duty to indemnify under the Excess Policy. As explained below, the HAS Holdings suit clearly related to Jacobsen's "business pursuits," and therefore was not potentially within the Excess Policy's coverage. Accordingly, Auto Club had no duty to defend.

 Jacobsen argues that, even if the "business pursuits" exclusion applies to the "Defense of Suits" section, the HAS Holdings suit did not relate to Jacobsen's "business pursuits" because "there was never any evidence, *just allegations,* that Jacobsen was doing anything connected to his 'trade, profession, or occupation' as defined in the policy (emphasis added)." Jacobsen's argument is self-defeating because "[t]he duty to defend is determined by comparing the language of the insurance policy with the *allegations* in the complaint." *Id.* (emphasis added). All allegations in the HAS Holdings petition accused Jacobsen of misappropriating assets of HAS Holdings, Heartland Automotive, and Jiffy Lube for the purpose of establishing a competing business. These allegations clearly relate to Jacobsen's "business pursuits"; that the record may not contain substantiating evidence is irrelevant.

In summary, we hold that Auto Club had no duty under the Excess Policy to defend Jacobsen against the HAS Holdings suit because it was neither for "personal injury" nor "property damage" as those terms are defined by the Excess Policy. Moreover, had the HAS Holdings suit been for "personal injury" or "property damage," Auto Club would not have had a duty to defend because the suit was for damages that arose out of Jacobsen's "business pursuits," which are excluded from the Excess Policy's coverage. As stipulated to by Jacobsen, Auto Club had no duty under the Homeowner's Policy to defend him against the HAS Holdings suit.

The trial court's judgment is reversed and the cause remanded with instructions to enter judgment in favor of Auto Club on its action for declaratory judgment and on Jacobsen's counterclaim for attorney's fees.

RICHARD B. TEITELMAN, P.J., concurs.

LAWRENCE E. MOONEY, J., concurs.

---

**8.** The duty to defend is said to be broader than the duty to indemnify because the duty to defend arises where "the complaint merely alleges facts that give rise to a claim *potentially* within the policy's coverage." *McCormack Baron,* 989 S.W.2d at 170 (emphasis added).