United States Court of Appeals,

Fifth Circuit.

No. 91–9530

Summary Calendar.

FIRST NATIONAL BANK OF LOUISVILLE, Plaintiff–Appellant,

v.

Loretta LUSTIG, et al., Defendants,

Fidelity & Deposit Co. of Maryland, Defendant–Appellee.

Oct. 26, 1992.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before JONES, DUHÉ, and WIENER, Circuit Judges.

DUHÉ, Circuit Judge:

A lender sued a savings and loan association ("S & L") and its fidelity insurer for losses resulting from the dishonesty of an S & L employee. The insurer moved to dismiss on the basis that no direct action lies against it for the asserted claim. The district court granted the motion to dismiss and directed the entry of final judgment under Federal Rule of Civil Procedure 54(b). Plaintiff appeals and asks that we certify to the Louisiana Supreme Court the question whether it may sue the insurer directly under the Louisiana direct action statute, La.Rev.Stat. § 22:655. For the following reasons, we deny the motion to certify and affirm the judgment of dismissal.

BACKGROUND

Plaintiff–Appellant First National Bank of Louisville (FNBL) sued the insured alleging losses from a deal gone sour: FNBL lost money on a project it financed in reliance on misrepresentations of an S & L employee. (In related proceedings, FNBL sued the employee.) FNBL also sued Defendant–Appellee Fidelity and Deposit Company of Maryland (F & D), who provided coverage for employee dishonesty through a Savings and Loan Blanket Bond in favor of the S & L. The district court granted F & D's motion to dismiss for failure to state a claim. After the Louisiana

Supreme Court handed down *Quinlan v. Liberty Bank & Trust Co.*[1] discussing the Louisiana direct action statute, FNBL moved for reconsideration of the dismissal. The district court denied reconsideration on the basis that F & D did not provide "liability" insurance as required for application of the direct action statute. We agree and affirm.

## ANALYSIS

The issue before us is whether insurance provided to the insured S & L under a standard-form Savings and Loan Blanket Bond covering fraudulent and dishonest acts of the S & L's employees provides "liability" insurance or "indemnity" insurance as these terms have been defined in Louisiana law.

The Louisiana direct action statute gives a tort victim a right of action directly against the tortfeasor's insurance company. By its own terms the direct action statute applies only to "liability" insurance. Nevertheless, the Louisiana Supreme Court has opined that the statute "is a mandate for a tort victim to bring a direct suit to recover damages for personal injury or corporeal property damage from the tortfeasor's insurer, regardless of whether the insurer has framed the policy as a liability or an indemnity contract." *Quinlan,* 575 So.2d at 352.

In a suit to recover loss to incorporeal property, however, such as the loss claimed in FNBL's complaint, the way the insurer has framed the policy is determinative. According to *Quinlan,* a tort victim seeking recovery of an incorporeal loss has a direct action only if the tortfeasor's policy provides "liability" coverage as opposed to "indemnity" coverage. A tort victim suffering only incorporeal loss or damage does not have the benefit of a direct action if "the parties to the insurance contract have agreed unambiguously that the contract shall be an indemnity contract only." *Quinlan,* 575 So.2d at 353.

---

[1] *Quinlan v. Liberty Bank & Trust Co.,* 575 So.2d 336 (La.1990).

Our inquiry, then, is whether F & D's contract unambiguously provides indemnity coverage only. The "chief distinction" between the two types of policies is that "under a liability policy a cause of action accrues when liability attaches, whereas under an indemnification policy there is no cause of action until the liability has been discharged, as by payment of the judgment by the insured." *Id.*

The *Quinlan* court specifically considered the arguments regarding an insurance policy provisions on "Loss," "Loss Payable," and "Action Against Company" to determine whether a cause accrues when liability attaches (a liability policy) or when a liability has been discharged (an indemnity policy). *See id.* at 354–55. Considering comparable provisions of the bond disputed here, we find that this policy unambiguously provides indemnity rather than liability coverage.

The policy does not indicate that a cause of action against F & D accrues when liability attaches. The policy obligates Fidelity to "indemnify the Insured for ... Loss resulting directly from dishonest or fraudulent acts of an Employee committed alone or in collusion with others." Bond at 2, Insuring Agreement A (appended to Def.'s Mot.Dismiss filed Jan. 19, 1988). The use of the phrase "indemnify for Loss" in this provision manifests the intent that the policy indemnify against loss rather insure against liability. Moreover, the provision continues, "Dishonest or fraudulent acts ... shall mean [such acts] committed ... with the manifest intent to cause *the Insured to sustain such loss.*" *Id.* (emphasis added). This definition signifies that the losses indemnified are *the insured* 's losses from employee dishonesty. The requirement that a loss be "sustained" further denotes an indemnity agreement. *See Meloy v. Conoco, Inc.,* 504 So.2d 833, 839 (La.1987) (noting the characteristic of an indemnity agreement to provide that the indemnitor is not liable "until the indemnitee actually makes payment or sustains loss").

FNBL contends that certain provisions of the policy suggest liability coverage or at least produce an ambiguity in the type of coverage intended. Contrary to arguments of FNBL, we do not

find that exclusion (u),[2] the "Discovery" section (describing which losses are within the period of coverage),[3] or the costs-of-defense provision (providing for indemnification against court costs and attorneys' fees)[4] instructive in determining the nature of the fidelity coverage. Nor do these provisions create an ambiguity in the policy suggesting liability coverage. Exclusion (u) and the "Discovery" section mention "loss covered under this bond," "loss covered by the bond," or "loss under this bond"; but these provisions do not define "loss" to include third party claims. The cost-of-defense provision sheds no light on the meaning of the employee dishonesty provision or the scope of its coverage.

This policy contains no ambiguity as did the policy in *Quinlan* requiring as a condition precedent to a claim that the insured pay "its full liability." (The court found the condition precedent

---

[2]Exclusion (u) provides that the bond does not cover "damages of any type for which the Insured is legally liable, except direct compensatory damages arising from loss covered under this bond." Bond at 4.

[3]The "Discovery" section provides as follows:

> This bond applies to loss discovered by the Insured during the bond period. Discovery occurs when the Insured becomes aware of facts which would cause a reasonable person to assume that a loss covered by the bond has been or will be incurred, even though the exact amount or details of loss may not then be known.
>
> Notice to the Insured of an actual or potential claim by a third party which alleges that the Insured is liable under circumstances which, if true, would create a loss under this bond constitutes such discovery.

Bond at 5, § 4.

[4]The cost-of-defense provision is as follows:

> E. The Underwriter shall indemnify the Insured against court costs and reasonable attorneys' fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability or alleged liability on account of any loss, claim or damage which, if established against the Insured, would constitute a collectible loss under this bond in excess of any Deductible Amount.
>
> The Insured shall promptly give notice to the Underwriter of the institution of any such suit or legal proceeding....

Bond at 3, Gen.Agreement E.

ambiguous because it could plausibly be interpreted as requiring payment of the full limit of its retention rather than the full payment of the judgment.)  We do not find this policy susceptible to more than one reasonable interpretation.  Guided by *Quinlan,* we hold that the policy in question is solely and unambiguously an indemnification policy.

The F & D policy provides that "This bond affords coverage only in favor of the Insured. No suit, action or legal proceedings shall be brought hereunder by any one other than the named Insured."  Bond at 5, § 5(f).  This no-action clause need not be ignored under *Quinlan* since the policy is unambiguously an indemnity policy.  The Louisiana high court has not extended the direct action statute's prohibition of no-action clauses to indemnity contracts in situations where a plaintiff is claiming only incorporeal injuries.  *See Quinlan* at 353.

Because *Quinlan* provides us sufficient guidance regarding application of the Louisiana direct action statute, we deny the motion to certify.  *See* La.Sup.Ct.R. 12;  La.Rev.Stat. § 13:72.1.

## CONCLUSION

The bond conclusively demonstrates the intent to indemnify losses and not the intent to insure against liability.  The direct action statute has no application to such a policy.  Accordingly, the district court properly dismissed the Plaintiff's suit against F & D.

Judgment AFFIRMED;  motion to certify DENIED.