631 So.2d 611 (1994)
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Plaintiff,
v.
ACADIA PARISH POLICE JURY, Defendant/Third Party Plaintiff/Appellant,
Acadia-Vermilion Community Action Program and Broussard, Poche, Lewis and Breaux, Third Party Defendants,
Fidelity and Deposit Insurance Company of Maryland, Third Party Defendant/Appellee.
No. 93-753.
Court of Appeal of Louisiana, Third Circuit.
February 2, 1994.
*612 Sharon Frazier Lyles, David Carlyle Voss, Baton Rouge, for State of Louisiana, Through Dept. of Transp. and Development.
Charles Michael Hill, Lafayette, for Acadia Parish Police Jury.
Maura Zivalich Pelleteri, Eugene R. Preaus, New Orleans, for Fidelity & Deposit Co. of Maryland.
John Franklin Craton, Crowley, for Acadia-Vermilion Community Action Program.
Henry Camille Perret Jr., Lafayette, for Poche Broussard Lewis & Breaux.
Before GUIDRY and YELVERTON, JJ., and BERTRAND, J. Pro Tem.[*]
BERTRAND, Judge Pro Tem.
The State of Louisiana, through DOTD, sued the Acadia Parish Police Jury to recover $131,532.25, plus interest, this amount representing the value of services that were allegedly billed for but never performed by one of the Police Jury's subcontracting agencies, the Acadia-Vermilion Community Action Program (AVCAP). The Police Jury denied liability and filed third party demands against AVCAP, AVCAP's insurer, Fidelity Deposit and Insurance Company of Maryland (Fidelity), and the Police Jury's auditing firm, Broussard, Poche, Lewis and Breaux. The trial court sustained Fidelity's exception of no right of action, finding that the Police Jury could not avail itself of the Louisiana Direct Action Statute, La.R.S. 22:655, because the "Commercial Crime Policy" issued by Fidelity to AVCAP was an indemnity policy rather than a liability policy. The Police Jury appeals.

*613 FACTS

The pertinent allegations of DOTD's petition can be summarized as follows. In 1983 DOTD and the Police Jury entered into a series of contracts for the funding of various public transportation programs with monies supplied by the Urban Mass Transit Administration, now the Federal Transportation Administration. Under the terms of the contracts, DOTD would reimburse the Police Jury with federal funds for 50% of the costs of services and expenses of the programs based upon monthly invoices that were submitted by the Police Jury. In 1990, federal auditors determined that many of the invoices submitted for reimbursement by either the Police Jury or its subcontracting employees were falsified. DOTD filed the instant suit to recover the sums that it paid pursuant to the falsified invoices, which federal and state auditors fixed at $131,532.25.
The Police Jury denied that any invoices were falsified and further alleged that all invoices were submitted by employees of AVCAP, a nonprofit corporation designated by the Police Jury to perform the services funded by the contracts with DOTD. In its third party demand, the Police Jury sought indemnification from AVCAP for any amounts it may be required to pay DOTD. The Police Jury also directly sued Fidelity, who had issued a Commercial Crime Policy to AVCAP on September 8, 1988. Fidelity responded to the Police Jury's third party demand with an exception of no right of action, contending that its policy was an indemnity policy, not a liability policy. The trial court agreed with Fidelity's position and dismissed the third party demand.

ANALYSIS
The Louisiana Direct Action Statute, La. R.S. 22:655, gives a tort victim a direct right of action against the tortfeasor's insurer. By its own terms, the direct action statute applies only to "liability" policies. However, in Quinlan v. Liberty Bank and Trust Co., 575 So.2d 336 (La.1991), the Supreme Court adopted the following analysis in applying the statute: a victim who sustains either personal injury or corporeal property damage may directly sue the tortfeasor's insurer, regardless of whether the insurer has framed the policy as a liability or an indemnity contract; a tort victim who suffers only an incorporeal loss may bring a direct action against the tortfeasor's insurer when the insurance contract has been framed as one against liability rather than as one of indemnity against loss. If the policy is ambiguous, it will be interpreted as a liability policy.
Under the analysis in Quinlan, then, our first inquiry is to determine the type of loss suffered by the victim. The Police Jury argues that it has suffered the loss of a corporeal movablemoney. It relies upon cases holding that a donation of cash is complete upon manual delivery to the donee. See Allen v. Allen, 301 So.2d 417 (La.App. 2d Cir.1974). Fidelity, however, characterizes the Police Jury's demand as one for recovery of damages that the Police Jury sustained through the fraudulent representations of AVCAP's employees. Fidelity relies upon First National Bank of Louisville v. Lustig, 975 F.2d 1165 (5th Cir.1992), which held that a bank had sustained an incorporeal loss when it loaned money in reliance upon the misrepresentations of a savings and loan employee. We find Fidelity's reliance upon Lustig persuasive and hold that the instant suit is one for the recovery of an incorporeal loss.
Our next inquiry is whether the Fidelity insurance policy unambiguously provides for indemnity coverage only. For the following reasons, we conclude that it does; therefore, the trial court properly denied the Police Jury a direct right of action against Fidelity.
The chief distinction between a liability policy and an indemnification policy is that under a liability policy, a cause of action accrues when liability attaches, whereas under an indemnification policy there is no cause of action until liability has been discharged, as by payment of the judgment by the insured. Quinlan, supra, at p. 355. In Quinlan, the Supreme Court held that a "Directors' and Officers' Liability" policy was ambiguous on this point because it was unclear whether the insured was required to pay the full amount of a judgment against it *614 or simply the amount of its deductible before making a claim under the policy. The policy also contained language that was consistent with liability coverage. For example, "Loss" was defined as any amount the insured is obligated to pay, including damages, judgments, settlements, costs of investigation, and costs, charges and expenses incurred in the defense of actions.
The Commercial Crime Policy issued by Fidelity does not contain similar ambiguities or language suggestive of liability coverage. The policy covers the loss of money, securities and other property resulting directly from employee dishonesty. Employee dishonesty is defined as acts committed with the intent to cause "you" (the named insured) to sustain loss. The insured may not bring an action under the policy until 90 days after filing proof of loss and within two years from the date the loss is discovered. The policy does not impose a duty to defend and excludes coverage for "expenses related to any legal action." Finally, the policy expressly states that "this insurance is for your benefit only. It provides no rights or benefits to any other person or organization."
In Lustig, supra, the U.S. Fifth Circuit found that a bond covering fraudulent and dishonest acts of employees unambiguously provided for only indemnity coverage. Like the policy in the instant case, the bond in Lustig, defined employee dishonesty as acts committed with the intent to cause the insured to sustain loss. The court relied upon this definition to conclude that the only losses covered under the policy were those of the insured and not of a third party. The Fidelity policy, however, appears to go one step further by expressly excluding any benefit to a third party.
When we consider the Fidelity policy's reference to the insured's loss, the requirement that a loss be sustained, the absence of a duty to defend, and language expressly excluding any benefits to a third party, we find that this policy unambiguously provides only indemnity coverage. The trial court correctly dismissed the Police Jury's direct action against Fidelity.
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to third party plaintiff/appellant, the Acadia Parish Police Jury.
AFFIRMED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.